Justice SCALIA delivered the opinion of the Court.
*231 We consider whether a contractual waiver of class arbitration is enforceable under the Federal Arbitration Act when the plaintiff's cost of individually arbitrating a federal statutory claim exceeds the potential recovery.
*2308 I
Respondents are merchants who accept American Express cards. Their agreement with petitioners-American Express and a wholly owned subsidiary-contains a clause that requires all disputes between the parties to be resolved by arbitration. The agreement also provides that "[t]here shall be no right or authority for any Claims to be arbitrated on a class action basis." In re American Express Merchants' Litigation, 667 F.3d 204, 209 (C.A.2 2012).
Respondents brought a class action against petitioners for violations of the federal antitrust laws. According to respondents, American Express used its monopoly power in the market for charge cards to force merchants to accept credit cards at rates approximately 30% higher than the fees for competing credit cards.[1] This tying arrangement, respondents said, violated § 1 of the Sherman Act. They sought treble damages for the class under § 4 of the Clayton Act.
Petitioners moved to compel individual arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. In resisting the motion, respondents submitted a declaration from an economist who estimated that the cost of an expert analysis necessary to prove the antitrust claims would be "at least several hundred thousand dollars, and might exceed $1 million," while the maximum recovery for an individual plaintiff would be $12,850, or $38,549 when trebled. App. 93. The District Court granted the motion and dismissed *232 the lawsuits. The Court of Appeals reversed and remanded for further proceedings. It held that because respondents had established that "they would incur prohibitive costs if compelled to arbitrate under the class action waiver," the waiver was unenforceable and the arbitration could not proceed. In re American Express Merchants' Litigation, 554 F.3d 300, 315-316 (C.A.2 2009).
We granted certiorari, vacated the judgment, and remanded for further consideration in light of Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010), which held that a party may not be compelled to submit to class arbitration absent an agreement to do so. American Express Co. v. Italian Colors Restaurant, 559 U.S. 1103, 130 S.Ct. 2401, 176 L.Ed.2d 920 (2010). The Court of Appeals stood by its reversal, stating that its earlier ruling did not compel class arbitration. In re American Express Merchants' Litigation, 634 F.3d 187, 200 (C.A.2 2011). It then sua sponte reconsidered its ruling in light of AT&T Mobility LLC v. Concepcion, 563 U.S. ----, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), which held that the FAA pre-empted a state law barring enforcement of a class-arbitration waiver. Finding AT&T Mobility inapplicable because it addressed pre-emption, the Court of Appeals reversed for the third time. 667 F.3d, at 213. It then denied rehearing en banc with five judges dissenting. In re American Express Merchants' Litigation, 681 F.3d 139 (C.A.2 2012). We granted certiorari, 568 U.S. ----, 133 S.Ct. 594, 184 L.Ed.2d 390 (2012), to consider the question "[w]hether the Federal Arbitration Act permits courts ... to invalidate arbitration agreements on the ground that they do not permit class arbitration of a federal-law claim," Pet. for Cert. i.
II
Congress enacted the FAA in response to widespread judicial hostility to *2309 arbitration. See AT&T Mobility, supra, at ----, 131 S.Ct., at 1745. As relevant here, the Act provides:
"A written provision in any maritime transaction or contract evidencing a transaction involving commerce to *233 settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.
This text reflects the overarching principle that arbitration is a matter of contract. See Rent-A-Center, West, Inc. v. Jackson, 561 U.S. ----, ----, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010). And consistent with that text, courts must "rigorously enforce" arbitration agreements according to their terms, Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), including terms that "specify with whom [the parties] choose to arbitrate their disputes," Stolt-Nielsen, supra, at 683, 130 S.Ct. 1758, and "the rules under which that arbitration will be conducted," Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). That holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been " 'overridden by a contrary congressional command.' " CompuCredit Corp. v. Greenwood, 565 U.S. ----, ----, 132 S.Ct. 665, 668-669, 181 L.Ed.2d 586 (2012) (quoting Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) ).
III
No contrary congressional command requires us to reject the waiver of class arbitration here. Respondents argue that requiring them to litigate their claims individually-as they contracted to do-would contravene the policies of the antitrust laws. But the antitrust laws do not guarantee an affordable procedural path to the vindication of every claim. Congress has taken some measures to facilitate the litigation of antitrust claims-for example, it enacted a multiplied-damages remedy. See 15 U.S.C. § 15 (treble damages). In enacting such measures, Congress has told us that it is willing to go, in certain respects, beyond the normal limits of law in advancing its goals of deterring and remedying unlawful trade practice. But to say that Congress must have intended *234 whatever departures from those normal limits advance antitrust goals is simply irrational. "[N]o legislation pursues its purposes at all costs." Rodriguez v. United States, 480 U.S. 522, 525-526, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987) (per curiam ).
The antitrust laws do not "evinc[e] an intention to preclude a waiver" of class-action procedure. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The Sherman and Clayton Acts make no mention of class actions. In fact, they were enacted decades before the advent of Federal Rule of Civil Procedure 23, which was "designed to allow an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 442 U.S. 682, 700-701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). The parties here agreed to arbitrate pursuant to that "usual rule," and it would be remarkable for a court to erase that expectation.
Nor does congressional approval of Rule 23 establish an entitlement to class proceedings for the vindication of statutory rights. To begin with, it is likely that such an entitlement, invalidating private arbitration agreements denying class adjudication, would be an "abridg[ment]" or *2310 "modif[ication]" of a "substantive right" forbidden to the Rules, see 28 U.S.C. § 2072(b). But there is no evidence of such an entitlement in any event. The Rule imposes stringent requirements for certification that in practice exclude most claims. And we have specifically rejected the assertion that one of those requirements (the class-notice requirement) must be dispensed with because the "prohibitively high cost" of compliance would "frustrate [plaintiff's] attempt to vindicate the policies underlying the antitrust" laws. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 166-168, 175-176, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). One might respond, perhaps, that federal law secures a nonwaivable opportunity to vindicate federal policies by satisfying the procedural strictures of Rule 23 or invoking some other informal class mechanism in arbitration. But we have *235 already rejected that proposition in AT&T Mobility, 563 U.S., at ----, 131 S.Ct., at 1748.
IV
Our finding of no "contrary congressional command" does not end the case. Respondents invoke a judge-made exception to the FAA which, they say, serves to harmonize competing federal policies by allowing courts to invalidate agreements that prevent the "effective vindication" of a federal statutory right. Enforcing the waiver of class arbitration bars effective vindication, respondents contend, because they have no economic incentive to pursue their antitrust claims individually in arbitration.
The "effective vindication" exception to which respondents allude originated as dictum in Mitsubishi Motors, where we expressed a willingness to invalidate, on "public policy" grounds, arbitration agreements that "operat [e] ... as a prospective waiver of a party's right to pursue statutory remedies." 473 U.S., at 637, n. 19, 105 S.Ct. 3346 (emphasis added). Dismissing concerns that the arbitral forum was inadequate, we said that "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." Id., at 637, 105 S.Ct. 3346. Subsequent cases have similarly asserted the existence of an "effective vindication" exception, see, e.g., 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 273-274, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009) ; Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), but have similarly declined to apply it to invalidate the arbitration agreement at issue.[2]
*236 And we do so again here. As we have described, the exception finds its origin in the desire to prevent "prospective waiver of a party'sright to pursue statutory remedies," Mitsubishi Motors, supra, at 637, n. 19, 105 S.Ct. 3346 (emphasis added). That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. And it would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access *2311 to the forum impracticable. See Green Tree Financial Corp.-Ala. v. Randolph, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights"). But the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy. See 681 F.3d, at 147 (Jacobs, C.J., dissenting from denial of rehearing en banc).[3] The class-action waiver merely limits arbitration to the two contracting parties. It no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938, see Fed. Rule Civ. Proc. 23, 28 U.S.C., p. 864 (1938 ed., Supp V); 7A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1752, p. 18 (3d ed. 2005). Or, to put it differently, the individual suit that was considered adequate to assure "effective vindication" of a federal *237 right before adoption of class-action procedures did not suddenly become "ineffective vindication" upon their adoption.[4]
A pair of our cases brings home the point. In Gilmer, supra, we had no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute at issue, the Age Discrimination in Employment Act, expressly permitted collective actions. We said that statutory permission did " 'not mean that individual attempts at conciliation were intended to be barred.' " Id., at 32, 111 S.Ct. 1647. And in Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995), we held that requiring arbitration in a foreign country was compatible with the federal Carriage of Goods by Sea Act. That legislation prohibited any agreement " 'relieving' " or " 'lessening' " the liability of a carrier for damaged goods, id., at 530, 534, 115 S.Ct. 2322 (quoting 46 U.S.C.App. § 1303(8) (1988 ed.))-which is close to codification of an "effective vindication" exception. The Court rejected the argument that the "inconvenience and costs of proceeding" abroad "lessen[ed]" the defendants' liability, stating that "[i]t would be unwieldy and unsupported by the terms or policy of the statute to require courts to *2312 proceed case by case to tally the *238 costs and burdens to particular plaintiffs in light of their means, the size of their claims, and the relative burden on the carrier." 515 U.S., at 532, 536, 115 S.Ct. 2322. Such a "tally[ing] [of] the costs and burdens" is precisely what the dissent would impose upon federal courts here.
Truth to tell, our decision in AT&T Mobility all but resolves this case. There we invalidated a law conditioning enforcement of arbitration on the availability of class procedure because that law "interfere [d] with fundamental attributes of arbitration." 563 U.S., at ----, 131 S.Ct., at 1748."[T]he switch from bilateral to class arbitration," we said, "sacrifices the principal advantage of arbitration-its informality-and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." Id., at ----, 131 S.Ct., at 1751. We specifically rejected the argument that class arbitration was necessary to prosecute claims "that might otherwise slip through the legal system." Id., at ----, 131 S.Ct., at 1753.[5]
The regime established by the Court of Appeals' decision would require-before a plaintiff can be held to contractually agreed bilateral arbitration-that a federal court determine (and the parties litigate) the legal requirements for success on the merits claim-by-claim and theory-by-theory, the evidence necessary to meet those requirements, the cost of developing *239 that evidence, and the damages that would be recovered in the event of success. Such a preliminary litigating hurdle would undoubtedly destroy the prospect of speedy resolution that arbitration in general and bilateral arbitration in particular was meant to secure. The FAA does not sanction such a judicially created superstructure.
The judgment of the Court of Appeals is reversed.
It is so ordered.
Justice SOTOMAYOR took no part in the consideration or decision of this case.

A charge card requires its holder to pay the full outstanding balance at the end of a billing cycle; a credit card requires payment of only a portion, with the balance subject to interest.

Contrary to the dissent's claim, post, at 2316 - 2317, and n. 3 (opinion of KAGAN, J.), the Court in Mitsubishi Motors did not hold that federal statutory claims are subject to arbitration so long as the claimant may effectively vindicate his rights in the arbitral forum. The Court expressly stated that, "at this stage in the proceedings," it had "no occasion to speculate" on whether the arbitration agreement's potential deprivation of a claimant's right to pursue federal remedies may render that agreement unenforceable. 473 U.S., at 637, n. 19, 105 S.Ct. 3346. Even the Court of Appeals in this case recognized the relevant language in Mitsubishi Motors as dicta. In re American Express Merchants' Litigation, 667 F.3d 204, 214 (C.A.2 2012).

The dissent contends that a class-action waiver may deny a party's right to pursue statutory remedies in the same way as a clause that bars a party from presenting economic testimony. See post, at 2314, 2317. That is a false comparison for several reasons: To begin with, it is not a given that such a clause would constitute an impermissible waiver; we have never considered the point. But more importantly, such a clause, assuming it makes vindication of the claim impossible, makes it impossible not just as a class action but even as an individual claim.

Who can disagree with the dissent's assertion that "the effective-vindication rule asks about the world today, not the world as it might have looked when Congress passed a given statute"? Post, at 2319. But time does not change the meaning of effectiveness, making ineffective vindication today what was effective vindication in the past. The dissent also says that the agreement bars other forms of cost sharing-existing before the Sherman Act-that could provide effective vindication. See post, at 2318 - 2319, and n. 5. Petitioners denied that, and that is not what the Court of Appeals decision under review here held. It held that, because other forms of cost sharing were not economically feasible ("the only economically feasible means for ... enforcing [respondents'] statutory rights is via a class action "), the class-action waiver was unenforceable. 667 F.3d, at 218 (emphasis added). (The dissent's assertion to the contrary cites not the opinion on appeal here, but an earlier opinion that was vacated. See In re American Express Merchants' Litigation, 554 F.3d 300 (C.A.2 2009), vacated and remanded, 559 U.S. 1103, 130 S.Ct. 2401, 176 L.Ed.2d 920 (2010).) That is the conclusion we reject.

In dismissing AT&T Mobility as a case involving pre-emption and not the effective-vindication exception, the dissent ignores what that case established-that the FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims. The latter interest, we said, is "unrelated" to the FAA. 563 U.S., at ----, 131 S.Ct., at 1752-1753. Accordingly, the FAA does, contrary to the dissent's assertion, see post, at 2309 - 2310, favor the absence of litigation when that is the consequence of a class-action waiver, since its " 'principal purpose' " is the enforcement of arbitration agreements according to their terms. 563 U.S., at ----, 131 S.Ct., at 1748 (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 487, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ).
* * *