[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11881
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-20235-PCH


JAVIER FREDY PAUCAR,

                                             Plaintiff - Appellant,

                        versus

MSC CROCIERE S.A.,
XYZ CORP.,

                                             Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 8, 2014)

Before WILSON, KRAVITCH and ANDERSON, Circuit Judges.

PER CURIAM:

Javier Paucar appeals the district court's order dismissing his lawsuit and compelling arbitration under an employment contract he signed to work on a ship owned by MSC Crociere, S.A. (MSC).  After careful review, we affirm.

While working aboard the MSC Sinfonia, a cruise ship sailing under the flag of Panama, Paucar, a Brazilian citizen, allegedly was injured.  He filed suit in a Florida state court, asserting claims under United States statutory and general maritime law.  MSC removed the case to federal court and filed a motion to compel arbitration based on a provision of the collective bargaining agreement (CBA) it had entered into with Paucar's trade union, which was incorporated into Paucar's employment contract.  The provision stipulated that any claim of a seafarer, expressly including the claims Paucar alleged in this case, "must be referred to arbitration [in Panama] to the exclusion of any other legal or court proceedings."  Further, the provision specified, "[t]he law of the vessel's flag state shall govern any such dispute."  The district court granted the motion, dismissed Paucar's case, and ordered the parties to proceed to arbitration.  This is Paucar's appeal.

District courts are obliged to enforce arbitration clauses governed by the United Nations Convention on the Recognition and Enforcement of Arbitral Awards.  A district court deciding a motion to enforce an agreement to arbitrate under the Convention and its implementing legislation conducts only a "very

2

limited inquiry" to decide (1) if jurisdictional prerequisites demonstrate that the Convention applies and (2) whether one of a limited set of affirmative defenses precludes enforcement of the agreement. *Bautista v. Star Cruises*, 396 F.3d 1289, 1294-95 (11th Cir. 2005) (internal quotation marks omitted).

To answer the first question, we ask whether there is a commercial agreement in writing within the Convention's meaning reasonably related to foreign commerce or to which at least one party is not an American citizen that provides for arbitration in a signatory country. *Id.* at 1294-95 n.7. With respect to this inquiry, Paucar contends only that there was no validly formed agreement to arbitrate because MSC systematically deprived him of the opportunity to review the arbitration provision and seek the advice of counsel before he signed it, in violation of the Seaman's Articles of Agreement Convention and Panamanian legislation implementing it.

We need not decide whether the problems Paucar identifies would result in a void arbitration agreement, however, because the factual underpinnings of his challenge are squarely belied by his own sworn testimony. The operative language of the arbitration provision is contained in the CBA between Paucar's trade union, and MSC incorporated the CBA into the contracts Paucar signed, according to his affidavit, "[e]very time [he] boarded a MSC vessel . . . ." Although Paucar may have been hurried "every time [he] signed on," he does not dispute that the same

arbitration provision was in each contract, including several before the one at issue here.  Therefore, he had an adequate opportunity both to review the agreement to arbitrate and to seek the advice of counsel before signing.  *Cf. id.* at 1301 ("In the limited jurisdictional inquiry prescribed by the Convention Act, we find it especially appropriate to abide by the general principle that one who has executed a written contract and is ignorant of its contents cannot set up that ignorance to avoid the obligation absent fraud and misrepresentation." (internal quotation marks and alteration omitted)).

Second, in the alternative, Paucar argues that he has a defense that precludes enforcement of the arbitration agreement because it is void as against public policy.  Specifically, he contends enforcing it would prevent him from effectively vindicating rights secured under United States law.  This argument, however, is squarely foreclosed by binding precedent.  In *Lindo v. NCL (Bahamas), Ltd.*, we rejected an identical contention and held a cruise ship crewmember could not raise a public-policy defense to enforcement of an arbitration clause, but could assert the contention only later, after arbitration had concluded.  652 F.3d 1257, 1276-77, 1280-82, 1284-85 (11th Cir. 2011).  Paucar's contentions about the impediments that application of Panamaian law may pose to his claims are, likewise, unavailing in light of *Lindo*.  There, we held a seafarer's contention that the choice-of-law clause contained in his arbitration agreement would foreclose all meaningful relief

4

under U.S. statutory law was premature and provided no defense to the enforcement of an arbitration clause. *Id.* at 1283-85.

Recognizing it supports compelling arbitration despite his arguments, Paucar protests that *Lindo* is not good law for two reasons. First, he argues that *Lindo* conflicts with our earlier decision in *Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009). As we explained in *Lindo*, however, to the extent *Thomas* acknowledged a public-policy defense to a motion to compel arbitration under the Convention, it squarely conflicted with this court's even earlier decision in *Bautista*. *Lindo*, 652 F.3d at 1277-80; *see also Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 n.2 (11th Cir. 2006) ("[W]hen a later panel decision contradicts an earlier one, the earlier panel decision controls."). Paucar's contention that *Thomas*'s effective-vindication defense can be read consistently with *Bautista* is itself foreclosed by *Lindo*'s conclusion that the two decisions irreconcilably conflict. *Lindo*, 652 F.3d at 1277-78; *see United States v. Smith*, 122 F.3d 1355, 1359 (11th Cir. 1997) ("Under the prior panel precedent rule, we are bound by earlier panel holdings . . . unless and until they are overruled en banc or by the Supreme Court.").[1]

---

[1] Paucar's reliance on "binding United States Supreme Court precedent" in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985), does not change the result. We explained in detail in *Lindo* why the conclusion we reached in that case, which governs in this one, was fully consistent with *Mitsubishi Motors*. *Lindo*, 652 F.3d at 1265-69, 1281-82. Although *American Express Co. v. Italian Colors Restaurant*, — U.S. — ,133 S. Ct. 2304 (2013), came after *Lindo*, it simply discussed the effective-vindication doctrine which

Second, Paucar correctly notes that the parties to *Lindo* settled their dispute before the mandate had issued but after the opinion issued, which, he contends, required vacatur of the opinion.  *See Key Enters. of Del., Inc. v. Venice Hospital*, 9 F.3d 893, 899-900 (11th Cir. 1993) (*en banc*).  But the *Lindo* panel chose not to vacate its opinion, and it therefore remains binding law.  *See* 11th Cir. R. 36-3 ("Under the law of this circuit, published opinions are binding precedent.  The issuance or non-issuance of the mandate does not affect this result."); *see also U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25-26 (1994) (holding mootness by reason of settlement does not require, but merely permits, vacatur of an opinion because "[j]udicial precedents . . . are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.").  Thus, *Thomas* provides no basis upon which we could reverse the district court's order compelling Paucar to arbitrate his claims.

Paucar also contends that, notwithstanding *Lindo*'s determination that such an argument may be raised only at the conclusion of arbitration, our decision in *Paladino v. Avnet Computer Technologies, Inc.*, means an arbitration clause is unenforceable if it does not permit relief equivalent to the federal statutory

---

"originated as dictum in *Mitsubishi Motors*," and cases decided afterwards, and declined to apply it.  *American Express Co.*, 133 S. Ct. at 2310-12.  The Supreme Court gave no further guidance on the doctrine's application that would alter our previous understanding of it.  Consequently, that case does not permit us to ignore *Lindo*'s conclusion that *Mitsubishi* provides no basis for refusing to enforce an agreement to arbitrate.  *Lindo*, 652 F.3d at 1265-69, 1278-82.

6

remedies a plaintiff seeks. 134 F.3d 1054, 1062 (11th Cir. 1998). But *Paladino* interpreted another statutory scheme, the Federal Arbitration Act, not the Convention and its implementing legislation. We therefore may not rely upon *Paladino* to ignore *Lindo*, which interpreted the law Paucar concedes governs this case. We held in *Lindo* that district courts must enforce arbitration provisions governed by the Convention, even when coupled with choice-of-law clauses that might preclude meaningful relief on federal statutory claims, provided they meet the jurisdictional prerequisites to enforcement, are not inoperative or incapable of performance, and were not invalid due to fraud, duress, mistake, or wavier. 652 F.3d at 1275-77. We are bound by that holding. Paucar may, if he so chooses, argue Panamanian law afforded him no meaningful relief at the award-enforcement stage.

Based upon binding caselaw, the district court correctly granted MSC's motion to compel arbitration. Accordingly, we affirm.

**AFFIRMED.**