CHIN, J.,
Concurring. — I agree that the rule of Gentry v. Superior Court (2007) 42 Cal.4th 443 [64 Cal.Rptr.3d 773, 165 P.3d 556] (Gentry), which was announced by a bare four-to-three majority of this court, is inconsistent with and invalid under the decisions of the United States Supreme Court interpreting the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.). I also agree that the class action waiver in this case is not unlawful under the National Labor Relations Act (29 U.S.C. § 151 et seq.), that defendant CLS Transportation Los Angeles, LLC, did not waive its right to arbitrate, that the arbitration agreement is invalid insofar as it purports to preclude plaintiff Arshavir Iskanian from bringing in any forum a representative action under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.), and that this conclusion is not inconsistent with the FAA. However, as explained below, I do not endorse all of the majority’s reasoning and discussion, including its endorsement of dicta in Sonic-Calabasas A, Inc. v. Moreno (2013) 57 Cal.4th 1109 [163 Cal.Rptr.3d 269, 311 P.3d 184] (Sonic II). I therefore concur in the judgment.
I. Both Gentry’s Rule and Sonic II’s Dicta Are Invalid Under the FAA.
As noted above, I agree with the majority that Gentry’s rule may not stand under the United States Supreme Court’s construction of the FAA. Indeed, for *393 that very reason, I joined Justice Baxter’s well-reasoned dissent in Gentry, which explained that neither the FAA nor California law permits courts to “elevate a mere judicial affinity for class actions as a beneficial device for implementing the wage laws above the policy expressed by both Congress and our own Legislature that voluntary individual agreements to arbitrate . . . should be enforced according to their terms.” (Gentry, supra, 42 Cal.4th at p. 477 (dis. opn. of Baxter, J.).)
I do not agree, however, that the approach to unconscionability a majority of this court described in dicta in Sonic II may “be squared” with the high court’s FAA decisions. (Maj. opn., ante, at p. 366.) That approach, as my dissent in Sonic II explained, is preempted by the FAA as the high court construed that act in AT&T Mobility LLC v. Concepcion (2011) 563 U.S. 333 [179 L.Ed.2d 742, 131 S.Ct. 1740] (Concepcion), American Express Co. v. Italian Colors Restaurant (2013) 570 U.S._[186 L.Ed.2d 417, 133 S.Ct. 2304] (Italian Colors), and several other decisions. (Sonic II, supra, 57 Cal.4th at pp. 1184-1192 (dis. opn. of Chin, J.).) Nothing has occurred since we issued Sonic II to change my view.
Indeed, the majority’s discussion in this case further reveals the invalidity under federal law of Sonic IT s dicta. According to the majority, under that dicta, whether the arbitration procedure to which the parties have agreed is unconscionable turns not on whether it permits recovery, but on whether it is, in a court’s view, less “effective ... for wage claimants” than a “dispute resolution mechanism” that includes the procedures and protections “the Berman statutes” prescribe. (Maj. opn., ante, at pp. 365-366.) However, the high court has established that the FAA does not permit courts to invalidate arbitration agreements based on the view that the procedures they set forth would “ ‘weaken [] the protections afforded in the substantive law to would-be complainants.’ [Citation.]” (Green Tree Financial Corp.-Ala. v. Randolph (2000) 531 U.S. 79, 89-90 [148 L.Ed.2d 373, 121 S.Ct. 513].) Consistent with this principle, in Italian Colors, the court recently held that an arbitration agreement may be not invalidated based on proof that its waiver of a congressionally approved mechanism — the class action — would make pursuing a federal antitrust claim prohibitively expensive. (Italian Colors, supra, 570 U.S. at pp. - [133 S.Ct. at pp. 2310-2312].) A fortiori, an arbitration agreement may not be invalidated based on a court’s subjective view that the agreement’s waiver of the Berman procedures and protections would render arbitration less “effective ... for wage claimants” than a “dispute resolution mechanism” that includes those procedures and protections. (Maj. opn., ante, at pp. 365-366.) According to the high court, the FAA is “a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.” (Moses H. Cone Hospital v. Mercury Constr. Corp. (1983) 460 U.S. 1, 24 [74 L.Ed.2d 765, 103 S.Ct. 927], italics added.) To quote Justice *394 Baxter’s dissent in Gentry, it does not permit courts to “elevate a mere judicial affinity for” the Berman dispute resolution mechanism “as a beneficial device for implementing the wage laws above the policy expressed by . . . Congress . . . that voluntary individual agreements to arbitrate . . . should be enforced according to their terms.” (Gentry, supra, 42 Cal.4th at p. 477 (dis. opn. of Baxter, J.).) I therefore do not join the majority opinion insofar as it suggests that the approach to unconscionability described in Sonic II’s dicta is valid under the FAA.
II. The PAGA Waiver Is Unenforceable.
Under PAGA, an “aggrieved employee” — i.e., “any person who was employed by” someone alleged to have violated the Labor Code “and against whom one or more of the alleged violations was committed” — may bring a civil action against the alleged violator to recover civil penalties for Labor Code violations both as to himself or herself and as to “other current or former employees.” (Lab. Code, § 2699, subds. (a), (c).)[1] As we have explained, an aggrieved employee’s PAGA action “ ‘is fundamentally a law enforcement action’ ” that “substitute^] for an action brought by the government itself.” (Arias v. Superior Court (2009) 46 Cal.4th 969, 986 [95 Cal.Rptr.3d 588, 209 P.3d 923].) The employee-plaintiff “acts as the proxy or agent of state labor law enforcement agencies, representing the same legal right and interest as those agencies” and seeking statutory civil penalties “that otherwise would be sought by” those agencies. (Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court (2009) 46 Cal.4th 993, 1003 [95 Cal.Rptr.3d 605, 209 P.3d 937].) By statute, 75 percent of the penalties “recovered by aggrieved employees” under PAGA goes to the Labor and Workforce Development Agency, and only 25 percent goes to “the aggrieved employees.” (§ 2699, subd. (i).) Accordingly, every PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee — the plaintiff bringing the action — or as to other employees as well, is a representative action on behalf of the state.
As relevant, the arbitration agreement here provides; “[E]xcept as otherwise required under applicable law, (1) EMPLOYEE and COMPANY expressly intend and agree that class action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this Policy/Agreement; (2) EMPLOYEE and COMPANY agree that each will not assert class action or representative action claims against the other in arbitration or otherwise-, and (3) each of EMPLOYEE and COMPANY shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person.” (Italics added.) Because, as explained above, all PAGA claims are representative actions, these provisions *395 purport to preclude Iskanian from bringing a PAGA action in any forum. To this extent, the arbitration provision is, for reasons the majority states, invalid under California law. (Maj. opn., ante, at pp. 382-384.)
I agree with the majority that this conclusion is not inconsistent with the FAA, but my reasoning differs from the majority’s. Although the FAA generally requires enforcement of arbitration agreements according to their terms, the high court has recognized an exception to this requirement for “a provision in an arbitration agreement forbidding the assertion of certain statutory rights.” (Italian Colors, supra, 570 U.S. at p. _ [133 S.Ct. at p. 2310]; see Mitsubishi Motors v. Soler Chrysler-Plymouth (1985) 473 U.S. 614, 637 [87 L.Ed.2d 444, 105 S.Ct. 3346] [“so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function”].) Accordingly, the conclusion that the arbitration agreement here is invalid insofar as it forbids Iskanian from asserting his statutory right under the PAGA in any forum does not run afoul of the FAA.
The majority takes a different route in finding no preemption. It first correctly observes that the FAA applies by its terms only to provisions in contracts “ ‘to settle by arbitration a controversy thereafter arising out of such contract.’ ” (Maj. opn., ante, at p. 384, italics omitted, quoting 9 U.S.C. § 2.) Based on this language, the majority then declares that a PAGA claim “lies” completely “outside the FAA’s coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship.” (Maj. opn., ante, at p. 386.) It is, instead, merely “a dispute between an employer and the state, which alleges directly or through its agents — either the Labor and Workforce Development Agency or aggrieved employees — that the employer has violated the Labor Code.” (Maj. opn., ante, at pp. 386-387.)
For several reasons, I question the majority’s analysis. First, I disagree that a PAGA claim is not “a dispute between an employer and an employee arising out of their contractual relationship.” (Maj. opn., ante, at p. 386.) As noted above, a person may not bring a PAGA action unless he or she is “an aggrieved employee” (§ 2699, subd. (a)), i.e., a person “who was employed by” the alleged Labor Code violator and “against whom” at least one of the alleged violations “was committed” (§ 2699, subd. (c)). In other words, as the majority explains, by statute, only “employees who ha[ye] been aggrieved by the employer” may bring PAGA actions. (Maj. opn., ante, at p. 387.) Thus, although the scope of a PAGA action may extend beyond the contractual relationship between the plaintiff-employee and the employer — because the plaintiff may recover civil penalties for violations as to other employees — the dispute arises, first and fundamentally, out of that relationship.
*396 Second, to find no FAA preemption in this case, we need not adopt a novel theory, devoid of case law support, that renders the FAA completely inapplicable to PAGA claims. Under the majority’s view that PAGA claims “lie[] outside the FAA’s coverage” because they are not disputes between employers and employees “arising out of their contractual relationship” (maj. opn., ante, at p. 386), the state may, without constraint by the FAA, simply ban arbitration of PAGA claims and declare agreements to arbitrate such claims unenforceable. I do not subscribe to that view, for which the majority offers no case law support. By contrast, as explained above, there is case law support — from the high court itself — for the conclusion that the arbitration agreement here is unenforceable because it purports to preclude Iskanian from bringing a PAGA action in any forum. We should limit ourselves to an analysis firmly grounded in high court precedent, rather than needlessly adopt a novel theory that renders the FAA completely inapplicable.
Third, contrary to the majority’s assertion, EEOC v. Waffle House, Inc. (2002) 534 U.S. 279 [151 L.Ed.2d 755, 122 S.Ct. 754] (Waffle House), to the extent it is relevant, actually does “suggest^ that the FAA preempts” (maj. opn., ante, at p. 386) the majority’s rule. The question there was whether, under the FAA, an agreement between an employer and an employee to arbitrate employment-related disputes precluded the Equal Employment Opportunity Commission (EEOC), which was not “a party to” the arbitration agreement and had never “agreed to arbitrate its claims,” from pursuing victim-specific relief in a judicial enforcement action. (Waffle House, supra, at p. 294.) The court said “no,” explaining that nothing in the FAA “place[s] any restriction on a nonparty’s choice of a judicial forum” (Waffle House, supra, at p. 289) or requires a “nonparty” to arbitrate claims it has not agreed to arbitrate (id. at p. 294). Because Iskanian is a party to the arbitration agreement in this case, this holding is inapposite. What is apposite in Waffle House is the court’s statement that the FAA “ensures the enforceability of private agreements to arbitrate.” (Waffle House, supra, 534 U.S. at p. 289.) This statement, which simply reiterates what the court has said “on numerous occasions” (Stolt-Nielsen S. A. v. AnimalFeeds Int’l Corp. (2010) 559 U.S. 662, 682 [176 L.Ed.2d 605, 130 S.Ct. 1758]), casts considerable doubt on the majority’s view that the FAA permits either California or its courts to declare private agreements to arbitrate PAGA claims categorically unenforceable.
Finally, under other high court precedent, there is good reason to doubt the majority’s suggestion that the FAA places no limit on “the ability of states to enhance their public enforcement capabilities by enlisting willing employees in qui tarn actions.” (Maj. opn., ante, at p. 387.) When the high court recently held in Concepcion that the FAA prohibits courts from conditioning enforcement of arbitration agreements on the availability of classwide arbitration procedures, even if such procedures “are necessary to prosecute small-dollar claims that might otherwise slip through the legal system,” it explained: “. .'. *397 States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.” (Concepcion, supra, 563 U.S. at p._ [131 S.Ct. at p. 1753].) In earlier decisions, the high court broadly explained that the FAA “is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary” (Moses H. Cone Hospital v. Mercury Constr. Corp., supra, 460 U.S. at p. 24, italics added), which “withdraws] the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration” (Southland Corp. v. Keating (1984) 465 U.S. 1, 10 [79 L.Ed.2d 1, 104 S.Ct. 852]). Thus, “if contracting parties agree to include” certain claims “within the issues to be arbitrated, the FAA ensures that their agreement will be enforced according to its terms even if a rule of state law would otherwise exclude such claims from arbitration.'” (Mastrobuono v. Shearson Lehman Hutton, Inc. (1995) 514 U.S. 52, 58 [131 L.Ed.2d 76, 115 S.Ct. 1212], italics omitted & added.) In other words, “[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.” (Concepcion, supra, 563 U.S. at p._[131 S.Ct. at p. 1747].) These binding pronouncements indicate that the FAA may, in fact, place a limit on the ability of a state, for policy reasons, to “enhance” its public enforcement capabilities by authorizing employees who have contractually agreed to arbitrate their statutory PAGA claims to ignore that agreement and pursue those claims in court as the state’s “representatives.” (Maj. opn., ante, at pp. 387-388.)
However, as explained above, requiring an arbitration provision to preserve some forum for bringing PAGA actions does not exceed that limit. I therefore concur in the judgment.
Baxter, J., concurred.

 All further unlabeled statutory references are to the Labor Code.