[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14940
Non-Argument Calendar
_____

D.C. Docket No. 0:13-cv-62827-DPG

CLAUDIA ESTER SIERRA,

Plaintiff - Appellant,

versus

CRUISE SHIPS CATERING AND SERVICES INTERNATIONAL, N.V.,
COSTA CROCIERE S.P.A.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 10, 2015)

Before MARCUS, JULIE CARNES and FAY, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Claudia Ester Sierra appeals from the district court's

order granting a motion of Defendants Cruise Ships Catering and Services

International, N.V. and Costa Crociere S.p.A. (collectively, "Defendants") to

compel arbitration.  On appeal, Sierra argues that the district court erred in granting the motion to compel arbitration because: (1) the Defendants failed to submit a valid, written arbitration agreement; and (2) the decision conflicts with Supreme Court precedent by enforcing an arbitration clause that is void against public policy.  After careful review, we affirm.

We review <u>de novo</u> the district court's order compelling arbitration. <u>Bautista v. Star Cruises</u>, 396 F.3d 1289, 1294 (11th Cir. 2005).

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") requires courts of signatory nations to give effect to private arbitration agreements and to enforce arbitral awards made in signatory nations.  United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. I(1), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3. The United States is a signatory to the Convention, and enforces its agreement to the Convention's terms through Chapter 2 of the Federal Arbitration Act ("FAA"). <u>See</u> 9 U.S.C. §§ 201-208.  Italy is also a signatory to the Convention.

In ruling on a motion to enforce an arbitration agreement under the Convention, a district court conducts a "very limited inquiry."  <u>Bautista</u>, 396 F.3d at 1294 (quotation omitted).  An arbitration agreement is governed by the Convention if four jurisdictional prerequisites are met: (1) the agreement is "in writing within the meaning of the Convention"; (2) "the agreement provides for

2

arbitration in the territory of a signatory of the Convention"; (3) "the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial"; and (4) one of the parties to the agreement is not an American citizen.  Id. at 1294 n.7.  If the agreement satisfies those jurisdictional prerequisites, the district court must order arbitration unless any of the Convention's affirmative defenses apply.  Id. at 1294-95.  Further, the Convention Act "generally establishes a strong presumption in favor of arbitration of international commercial disputes."  Id. at 1295 (quotation omitted).

Here, Sierra does not dispute that the second through fourth jurisdictional prerequisites are satisfied.  Instead, she challenges only the first prerequisite, which requires an agreement in writing.  We have interpreted this requirement to mean that "the party [must] bring the court the written agreement."  Czarina, L .L.C. v. W.F. Poe Syndicate, 358 F.3d 1286, 1291 (11th Cir. 2004).  In Czarina, we concluded that the federal courts did not have subject matter jurisdiction over a dispute because there was no arbitration agreement in writing between the parties, and in fact, there had been never been an underlying written agreement at all.  Id. at 1293.

Sierra claims that the Defendants presented no agreement to arbitrate in writing to the district court as required by the Convention, and, moreover, that the arbitration provision on which Defendants rely does not cover her dispute.  We are

3

unpersuaded.   For starters, parties have an "agreement in writing" under the Convention if there is "an arbitral clause in a contract or an arbitration agreement, signed by the parties."  Convention, art. II(2).  Here, the arbitral clause is found in the "Collective Agreement" -- a collective bargaining agreement ("CBA") entered into by Costa and three seafarer/employee trade unions -- that is incorporated by reference into Sierra's signed employment contract.   The last page of Sierra's signed employment agreement provides that: "By signing this document, the Employee affirms having read and understood the conditions of this Agreement and the associated Collective Agreement and asserts that no promises or other verbal agreements have been entered."   In turn, the CBA, which sets the standard terms and conditions applicable to all non-European Union citizens employed aboard Costa ships, provides for the arbitration of disputes:

> 28.1  Any disputes that may arise regarding the interpretation of this Agreement shall be examined by the Parties to the Agreement themselves.
>
> 28.2 Any questions that may arise concerning the application of laws, or of the terms and conditions of this Agreement [the CBA] or of individual agreements, shall be subject to the arbitrate [sic] of a Board of Arbitration in accordance with Italian Law.  The Board of Arbitration shall be made up of three members, one shall be appointed by the seafarer, one by Shipowner, and the third to act as chairperson designated by the first two.

To reiterate, by signing her employment agreement, Sierra affirmed that she "read and understood the conditions" of "the associated Collective Agreement" and asserted "that no promises or other verbal agreements have been entered."  In

4

addition, the CBA includes an arbitration provision.  For purposes of the limited jurisdictional inquiry that we are tasked with performing, Bautista, 396 F.3d at 1294, the language in the employment agreement and the incorporated CBA is more than sufficient to show that Sierra and the Defendants entered into an agreement in writing that includes an arbitration provision, as required by the Convention.  See id. at 1301 (stressing that our inquiry at this stage is "colored by a strong preference for arbitration" and that the Convention "does not require a district court to review the putative arbitration agreement -- or investigate the validity of the signatures thereon -- before assuming jurisdiction").  There is no dispute that the Defendants filed both the CBA and the individual agreement with the court.

We also conclude that the language of the CBA's arbitral clause encompasses Sierra's claims.  Her complaint alleged negligence and unseaworthiness based upon the Defendants' alleged failure to provide a reasonably safe place to work; failure to promulgate reasonable rules to ensure health and safety; failure to provide prompt, proper and adequate medical care; failure to provide adequate work hours and rest periods; and failure to adhere to the Seafarers' Hours of Work and Manning of Ships Convention, 1996.  For its part, the CBA addresses hours of duty (Article 6), overtime (Article 7), rest periods (Article 8), paid leave (Article 9), medical attention (Article 17), sick pay (Article

5

18), personal protective equipment (Article 24), and the shipboard occupational safety committee (Article 25).    Similarly, Sierra's individual employment agreement addresses duration of employment (Paragraph 3), work day (Paragraph 4), overtime hours (Paragraph 5), time off (Paragraph 5), paid leave (Paragraph 7), medical assistance (Paragraph 13), compensation for illness (Paragraph 14), disability (Paragraph 16), and protective equipment for personnel (Paragraph 19). Thus, the areas concerning Sierra's claims are specifically addressed in the terms of CBA and the employment agreement.

Sierra's reliance on Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204 (11th Cir. 2011), is misplaced. There, we determined that a plaintiff's causes of action for intentional tort following a rape were outside the scope of her employment agreement and the CBA, whereas her negligence allegations and causes of action were within the scope since they arose "directly from her undisputed status as a 'seaman' employed by Princess Cruise Lines." Id. at 1220. Here, all of Sierra's claims are based on allegations that are dependent on her status as a seaman employed by the cruise line and the rights that she derived from that employment status. As a result, we are compelled to conclude that Sierra's claims are within the scope of CBA's arbitration provision, which covers "questions that may arise concerning . . . the terms and conditions of this Agreement [the CBA] or of individual agreements." The district court did not err in determining that the

6

allegations of the Sierra's complaint "fall squarely within the scope of the terms and provisions of the Collective Bargaining Agreement."

We likewise find no merit to Sierra's claim that the district court's decision runs afoul of recent Supreme Court precedent. We expressly held in Lindo v. NCL (Bahamas) Ltd. that an arbitration provision in a seaman's employment contract containing a choice-of-law provision is enforceable. 652 F.3d 1257, 1275 (11th Cir. 2011). Sierra argues that this kind of choice-of-law provision also is found in the CBA at issue here, but that it should be invalidated based on the "effective vindication exception," which was mentioned in Am. Express Co. v. Italian Colors Rest., 133 S. Ct. 2304 (U.S. 2013), and Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985). According to the Supreme Court, "[t]he 'effective vindication' exception . . . originated as dictum in Mitsubishi Motors, where we expressed a willingness to invalidate, on 'public policy' grounds, arbitration agreements that 'operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies.'" Italian Colors, 133 S. Ct. at 2310 (emphasis omitted). Sierra says that the CBA's choice-of-law provision waives her statutory rights and should be invalidated under the effective vindication exception.

However, in Mitsubishi, the Supreme Court held that federal courts should enforce agreements resolving antitrust claims through arbitration when those agreements arise from international commercial transactions. 473 U.S. at 638-39.

7

In so doing, the Court declined to apply the effective vindication exception to the choice-of-law provision. Id. at 637 n.19. Similarly, in Italian Colors, the Supreme Court held that a class action waiver in an arbitration agreement was not void under the Federal Arbitration Act. 133 S. Ct. at 2312. Rejecting the application of the "effective vindicaton exception," the Court held that the class action waiver in the arbitration agreement did not "eliminate[t] those parties' right to pursue their statutory remedy." Id. at 2311. Because the Supreme Court has never applied the "effective vindication doctrine" to invalidate any provisions in an arbitration agreement, much less to invalidate the choice-of-law provision that Sierra challenges here, the Supreme Court's discussion of the effective vindication doctrine in these cases cannot be read to overrule our express holding in Lindo.

For these reasons, we conclude that the district court did not err in granting the Defendants' motion to compel arbitration.

**AFFIRMED.**