ANDREW L. CARTER, JR., District Judge:
*437 On October 17, 2017, Gustavo Camilo (hereinafter, "Plaintiff" or "Mr. Camilo") filed this putative class action in New York state court under the Class Action Fairness Act against Lyft, Inc., Endor Car & Driver, LLC, Tri-City, LLC, Tri-State Car and Driver, LLC, Black Car Assistance Corporation, and Black Car Operators Injury Compensation Fund, Inc. In his Complaint, Mr. Camilo alleges a violation of New York Labor Law ("NYLL") § 193 for unlawful wage deductions, as well as a claim for breach of contract of Lyft's Terms of Service, fraud, and unjust enrichment. On June 11, 2018, Lyft, Inc., Endor Car & Driver, LLC, Tri-City, LLC, and Tri-State Care and Driver, LLC (collectively, "Defendants") moved to compel the arbitration of Mr. Camilo's claims and stay the litigation against Defendants pending the resolution of arbitration.
PROCEDURAL HISTORY
As stated, Plaintiff filed this putative class action in New York state court on October 17, 2017. ECF No. 1, Ex. 1 ("Compl."). On November 21, 2017, this Court received a Notice of Removal on the basis of diversity jurisdiction. ECF No. 1. On December 21, 2017, Plaintiff filed a Motion to Remand the proceedings back to New York state court, along with supporting affidavits, a Memorandum of Law, and a Declaration. ECF Nos. 10-14. Defendants filed their respective Oppositions to Plaintiff's Motion on January 17 and February 12, 2018. ECF Nos. 18, 28. On March 19, 2018, the Court denied Plaintiff's Motion to Remand. ECF No. 34.
While the Parties were litigating the Motion to Remand, Defendants also sought leave to file a motion to compel arbitration. ECF No. 16. On March 13, 2018, the Court granted Defendants leave to file their Motion. ECF No. 33. The Court also indicated that the then pending Supreme Court decision in Epic Systems Corp. v. Lewis , --- U.S. ----, 138 S.Ct. 1612, 200 L.Ed.2d 889 (2018) would likely be informative as it relates to Defendants' Motion to Compel Arbitration. Id. On June 11, 2018, Defendants filed their Motion along with a supporting Memorandum of Law and declarations. ECF Nos. 37-40. On July 16, 2018, Plaintiff filed his Opposition to Defendants' Motion to Compel Arbitration. ECF No. 43. On August 6, 2018, Defendants filed their Reply to Plaintiff's Opposition. ECF No. 44. Defendants' Motion is deemed fully briefed. After careful review, Defendants' Motion to Compel Arbitration is hereby GRANTED and litigation is hereby STAYED pending the resolution of arbitration.
BACKGROUND
Although familiarity with the factual background and proceeding arguments is assumed, the Court briefly revisits the facts relevant to the disposition of this Motion.
Plaintiffs in this case were employed by Lyft and its subsidiaries as drivers. Compl. ¶ 1. Lyft's Terms of Service Agreement, which is updated periodically, governs the terms and conditions for drivers and riders (collectively, "users"). Def.'s Mem. Supp. Mot. Compel, 3, ECF No. 38 ("Def's Mem."). On September 30, 2016, Lyft updated their Terms of Service Agreement. Id ; Pl.'s Opp. Mot. Compel, 5, ECF No. 43 ("Opp."). When Lyft's Terms of Service are updated, in order for a user to continue using Lyft's rideshare services, they must indicate their acceptance of the new Terms of Service Agreement by pushing the "I ACCEPT" button that presents itself on the screen when the Lyft Platform *438 is opened following an update. Def's Mem. 3; Opp. 5. The Lyft Platform provides users with an opportunity to scroll through the entire updated Terms of Service before accepting the terms. Id. Upon accepting the updated Terms of Service, users are then free to resume their use of Lyft services. Id. On November 17, 2016, Mr. Camilo clicked the "I ACCEPT" button. Def's Mem. 3.
The second paragraph on the first page of the Terms of Service indicates that "THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS YOU AND LYFT HAVE AGAINST EACH OTHER CAN BE BROUGHT ..." Laufer-Edel Dec. Supp. Mot. Compel, Ex. 1 ("Terms of Service"). The second paragraph goes on to state that any claims against Lyft must be submitted to final and binding arbitration. Id. It also indicates that all claims must be submitted on an individual basis, not as a class or group. Id. Section 17 of Lyft's October 30, 2016 Terms and Service Agreement is titled "Dispute Resolution and Arbitration Agreement." Id. Section 17(a) of the Terms of Service is titled "Agreement to Binding Arbitration Between You and Lyft." The first line states as follows:
"YOU AND LYFT MUTUALLY AGREE TO WAIVE OUR RESPECTIVE RIGHTS TO RESOLUTION OF DISPUTES IN A COURT OF LAW BY A JUDGE OR JURY AND AGREE TO RESOLVE ANY DISPUTE BY ARBITRATION, as set forth below."
Id. Further, Section 17(j) of the Terms of Service titled, "Opting Out of Arbitration for Driver Claims That Are Not In a Pending Settlement Action," allowed users to opt out within a 30-day period either by e-mail or certified mail. Id.
On November 21, 2017, Plaintiffs filed a class action against Lyft and its subsidiaries alleging unlawful wage deductions under NYLL § 193, breach of contract, fraud, and unjust enrichment. See Compl. Defendants responded by filing their Motion to Compel Arbitration claiming that the Federal Arbitration Act requires enforcement of the Arbitration Agreement with Camilo, particularly in light of the Supreme Court's recent opinion in Epic Systems. See Def's Mem. Plaintiff responded by claiming that Lyft's Terms of Service were unconscionable and thus unenforceable. Opp. 7. The precedent set by Epic Systems controls the issues presented in this case and indicates that they are fit for arbitration in accordance with Lyft's assented-to Terms of Service.
LEGAL STANDARD
The Federal Arbitration Act ("FAA") governs arbitration agreements. See 9 U.S.C. § 2. The FAA provides, in part:
"A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
Id. The FAA serves to ensure that disputes are settled efficiently in a manner well-suited for the type of suit. See AT & T Mobility LLC v. Concepcion , 563 U.S. 333, 344, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) ("The overarching purpose of the FAA ... is to ensure the enforcement of agreements according to their terms so as to facilitate streamlined proceedings.").
"Parties are not required to arbitrate unless they have agreed to do so."
*439 Meyer v. Uber Technologies, Inc. , 868 F.3d 66, 73 (2d Cir. 2017) (citing Schnabel v. Trilegiant Corp. , 697 F.3d 110, 118 (2d Cir. 2012) ). "In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." In re Am. Exp. Fin. Advisors Sec. Litig. , 672 F.3d 113, 128 (2d Cir. 2011). Arbitration agreements are treated as any other contract, and thus they are governed by state law principles of contract formation. Id. at 73 (citing Nicosia v. Amazon.com, Inc. , 834 F.3d 220, 231 (2d Cir. 2016) ). In order for a contract to exist, there must be a manifestation of agreement between the parties. Specht v. Netscape Communications Corp. , 306 F.3d 17, 28-29 (2d Cir. 2002). Courts continue to note that although technology and the internet have broadened the diversity and complexity of cases, the principles of contract have remained the same. See Register.com Inc. v. Verio, Inc. , 356 F.3d 393, 403 (2d Cir. 2004). Courts have made it clear that "an electronic click can suffice to signify the acceptance of a contract ... as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." Meyer , 868 F.3d at 75 (quoting Sgouros v. TransUnion Corp. , 817 F.3d 1029, 1033-34 (7th Cir. 2016) ). More specifically, "courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking "I agree." Id; see also Fteja v. Facebook, Inc. , 841 F.Supp.2d 829, 837 (S.D.N.Y. 2012) (collecting cases).
The FAA requires courts to "rigorously" enforce arbitration agreements according to their terms. Epic Systems , 138 S.Ct. at 1621 ; see American Express Co. v. Italian Colors Restaurant , 570 U.S. 228, 233, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013) ("... including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted."). More notably, "the Arbitration Act seems to protect pretty absolutely," a party's "intention to use individualized rather than class or collective action procedures." Id.
DISCUSSION
As stated, the FAA governs arbitration agreements that are both in writing and involve commerce. 9 U.S.C. § 2. Here, Lyft's Terms of Service are in writing, and the Agreement pertains to internet transactions and rideshare services. See United States v. Konn , 634 F.App'x 818, 821 (2d Cir. 2015). Further, the FAA states that arbitration agreements are "valid, irrevocable, and enforceable" unless reasons based in law or equity call for revocation of the contract. 9 U.S.C. § 2. No reasons based in law or equity exist in this case to lead to the revocation of the entire Arbitration Agreement.
I. Mr. Camilo Entered Into A Valid Contract With Lyft That Included A Valid Arbitration Agreement
In accordance with state law principles, the creation of a contract rests on the manifestation of an agreement between parties. See Specht , 306 F.3d at 28-29. Clickwrap agreements are widely accepted as valid and enforceable contracts. See Meyer , 868 F.3d at 75. Here, there was a manifestation of an agreement on behalf of Mr. Camilo when he clicked "I ACCEPT" in order to continue using the Lyft Platform. Def's Mem. 3. Mr. Camilo knew he could not proceed without accepting the new Terms of Service, and Mr. Camilo had the opportunity, though he chose not to use it, to read the entire updated Terms of Service. Id. Thus, by clicking "I ACCEPT" upon being presented with the updated *440 Terms of Service, Mr. Camilo accepted the terms of the updated contact and entered into an agreement with Lyft and its subsidiaries. See Meyer , 868 F.3d at 75.
The valid contract between Lyft and the users, assented to upon clicking "I ACCEPT," contained a broad and extensive arbitration clause. Terms of Service, Section 17. The second paragraph of the updated Terms of Service notified the user of the arbitration provisions contained within, and also gave an overview of the requirements, including that all arbitration must be conducted on an individualized basis.[1] Terms of Service. In Epic Systems , the Supreme Court continued its endorsement of arbitration by reemphasizing that arbitration agreements must be enforced according to their terms. See 138 S.Ct. 1612. Terms can include location requirements, preferred arbitrators, and various rules of arbitration. See Italian Colors , 570 U.S. at 233, 133 S.Ct. 2304. For the purposes of the instant Motion, Epic Systems specifies that the FAA protects a party's right to require individualized rather than collective or class procedures. See Epic Systems , 138 S.Ct. at 1621. Here, Defendants were very specific in the construction of the Arbitration Agreement. They included a provision that required arbitration to be conducted on an individualized basis - a condition that Plaintiff now challenges. That challenge fails.
Thus, because Plaintiff manifested his assent to an agreement with Lyft by clicking "I Accept," and because Epic Systems states that a party may require individualized rather than class arbitration, this Court finds that Mr. Camilo entered into a valid and enforceable Arbitration Agreement with Lyft.
II. The Disputes At Issue Come Within The Scope Of The Arbitration Agreement
Not only is the agreement to arbitrate valid and enforceable, but the dispute squarely fits within the scope of the Arbitration Agreement. See Terms of Service. The Arbitration Agreement states that arbitration is required for "ALL DISPUTES AND CLAIMS BETWEEN US." Id. , Section 17(a). "Us" is defined as Lyft and its affiliates, subsidiaries, parents, successors, and assigns. Id. "Disputes" include those "arising of or relating to" Lyft's Terms of Services, the Lyft Platform, a user's relationship with Lyft, or any "payments made by you or any payments made or allegedly owed to you." Id. More specifically, the Arbitration Agreement states that claims arising under "state or federal wage-hour law," claims for "breach of any express or implied contract," and "all other federal and state statutory and common law claims," are subject to arbitration. Id. Here, Plaintiff alleges breach of contract, unjust enrichment, fraud, and a violation of New York Labor Law § 193. All of these claims are contemplated by the Arbitration Agreement.
Thus, because there is a valid and enforceable contract, and because the disputes fall within the scope of the Arbitration Agreement contained within that contract, the issues are fit to be resolved in accordance with the terms set forth in the Arbitration Agreement.
CONCLUSION
For the reasons set forth by the Court, Defendant's Motion to Compel Arbitration is hereby GRANTED. Litigation in this case is hereby STAYED pending the resolution *441 of arbitration, pursuant to 9 U.S.C. § 3.
SO ORDERED.

Users were also given the opportunity to opt out of the arbitration provisions within a 30-day period after assenting to the updated Terms of Service. See Terms of Service.