Filed 3/14/16  Amlap ST, LLC v. Asset Management Consultants CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| AMLAP ST, LLC et al., | B263056 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC459858) |
| v. | |
| ASSET MANAGEMENT CONSULTANTS INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elihu M. Berle and John Shepard Wiley, Jr., Judges.  The judgment is reversed and remanded with directions.  Appeal dismissed as to Kevin James Hopper; Smith, Linden & Basso, LLP and Allen L. Basso.

ORIGINAL PROCEEDINGS in mandate.  Petition to vacate the judgment entered as to Amlap ST, LLC and Superstitition Lookout Delaware, LLC, is granted.

Catanzarite Law Corporation, Kenneth J. Catanzarite, Nicole M. Catanzarite-Woodward and Eric V. Anderton for Amlap ST, LLC, Superstition Lookout Delaware, LLC, Plaintiffs and Appellants.

Jackson, DeMarco, Tidus & Peckenpaugh, M. Alim Malik and Charles M. Clark for Asset Management Consultants, Inc., BH & Sons, LLC, James Hopper and Gloria Hopper, Defendants and Respondents.

Cadden & Fuller, Thomas H. Cadden, John B. Taylor and Andrew M. Sussman for Smith, Linden & Basso LLP and Allen L. Basso, Defendants and Respondents.

Law Offices of Anthony C. Duffy and Anthony C. Duffy for Kevin James Hopper, Defendant and Respondent.

_____

Amlap ST, LLC and Superstition Lookout Delaware, LLC (collectively Amlap investors) appeal from the February 23, 2015 judgment confirming an arbitration award and awarding attorney fees and costs in favor of Asset Management Consultants, Inc., BH & Sons, LLC, James R. Hopper and Gloria Hopper (collectively AMC parties); Kevin James Hopper (K. Hopper); and Smith, Linden & Basso, LLP and Allen L. Basso (collectively Basso parties). The arbitration was conducted pursuant to the arbitration provision contained in a real estate purchase and sale agreement between iStar CTL I, L.P., as seller, and BH & Sons, LLC, as purchaser, dated July 26, 2006 (iStar PSA), after the trial court granted the AMC parties' petition to compel arbitration and granted in part the petitions to compel arbitration filed by K. Hopper and the Basso parties. The Amlap investors, who are not signatories to the iStar PSA, contend that the iStar PSA's arbitration provision does not apply to disputes between them and the AMC parties, K. Hopper and the Basso parties. We agree. As to the AMC parties, we reverse the judgment and remand with directions to the trial court to deny the petitions to confirm the arbitration award and to grant the Amlap investors' petition to vacate that award. With respect to K. Hopper and the Basso parties, because the judgment entered by the trial court does not completely dispose of all causes of action between them and the Amlap investors, the judgment is not appealable. At the request of all affected parties, however, we treat the briefs and record as a petition for writ of mandate, grant the petition and direct the trial court to vacate the judgment entered as to these parties, deny the petitions to confirm the arbitration award and grant the Amlap investors' petition to vacate that award.

2

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Transaction for the La Palma Property and the iStar PSA*

In 2006 iStar CTL I, through its broker CB Richard Ellis (now CBRE), circulated an offering memorandum to potential buyers soliciting bids for commercial real property located at 5515 East La Palma Avenue in Anaheim. BH & Sons, a California limited liability company, ultimately submitted the winning bid and entered into the iStar PSA with iStar CTL I. (BH & Sons's managing member is Asset Management Consultants; James Hopper and Gloria Hopper are partial owners and employees of Asset Management Consultants.) Six offers had been submitted for the property, ranging from $29 million to $33.5 million.

The iStar PSA stated it was "made and entered into by and between Purchaser and Seller as of July 26, 2006." The agreement defined "Seller" as iStar CTL I, L.P., a Delaware limited partnership, and "Purchaser" as BH & Sons, LLC, a California limited liability company. CBRE was identified as "Seller's Broker," and Asset Management Consultants, Inc. as "Purchaser's Broker." The purchase price for the property was $34,550,000.

Section 12.1 provided the iStar PSA was binding on assigns of each of the parties to the agreement and authorized BH & Sons as "Purchaser" to assign its rights under the agreement under certain conditions, specifically including to "an entity controlling, controlled by, or under common control with Purchaser and/or Asset Management Consultants, Inc., a California corporation, or tenant in common investors procured by Purchaser and/or Asset Management Consultants, Inc." Section 12.18 provided there were no third party beneficiaries of the iStar PSA: "The provisions of this Agreement and of the documents to be executed and delivered at Closing are and will be for the benefit of Seller and Purchaser only and are not for the benefit of any third party, and accordingly, no third party shall have the right to enforce the provisions of this Agreement . . . ."

The iStar PSA contained an arbitration provision, section 12.20, "Mandatory Arbitration," which provided, "Except for an action in which Purchaser asserts a claim of specific performance as and to the extent permitted by this Agreement, the parties have agreed to submit disputes to mandatory arbitration in accordance with the provisions of Exhibit H hereto and made a part hereof for all purposes. Each of Seller and Purchaser waives the right to commence an action in connection with this Agreement in any court and expressly agrees to be bound by the decision of the arbitrator determined in Exhibit H. The waiver of this Section 12.20 will not prevent Seller or Purchaser from commencing an action in any court for the sole purpose of enforcing the obligation of the other party to submit to binding arbitration or the enforcement of an award granted by arbitration herein . . . ."

Exhibit H, in turn, provided, "The parties have agreed to submit disputes to mandatory arbitration in accordance with the following provisions: [¶] . . . [¶] . . . Any dispute among Seller and Purchaser as to the interpretation of any provision of this Agreement or the rights and obligations of any party hereunder shall be resolved through binding arbitration as hereinafter provided in Los Angeles, California. . . ."

2. *The Amlap Investors' Acquisition of an Interest in the La Palma Property*

When entering into the agreement to acquire the La Palma property, BH & Sons and Asset Management Consultants intended to sell direct or indirect fractional ownership interests in the La Palma property to third-party investors. To that end, BH & Sons and Asset Management Consultants provided property information packages and a private placement memorandum to various qualified sophisticated individual investors and business entities. The property information package stated BH & Sons, through Asset Management Consultants, had negotiated a purchase price of $34,550,000 and a real estate commission of $1.3 million would be paid by the seller to Asset Management Consultants. The property information package also referred to market reports that CBRE had produced regarding the rental market and the property's current tenant, Cingular Wireless.

4

Investors either formed their own single purpose limited liability companies, which purchased an interest in the La Palma property as tenants in common, or became limited partners in Amlap Venture, L.P., which then purchased a tenant-in-common interest in the property. The cotenancy was operated and managed by BH & Sons pursuant to the terms of cotenancy agreements signed by each investor.[1]

During this time Superstition Lookout, an investment group of retired teachers and coaches, had sold a mobile home park and was looking for a real estate investment that would qualify as an Internal Revenue Code section 1031 tax deferred exchange. Superstition Lookout decided to purchase a 7.039 percent tenant-in-common interest in the La Palma Avenue property for $950,000. Amlap ST was organized as a single purpose limited liability company to hold Superstition Lookout's tenant-in-common interest; Superstition Lookout owned all the membership interests in Amlap ST.

Amlap ST then entered into a purchase and sale agreement with BH & Sons, dated August 17, 2006, which provided BH & Sons was selling the investor's property interest to the investor and assigning and transferring to the investor BH & Sons's rights and remedies under the iStar PSA with respect to the investor's property interest. The assignment agreement specified, "Except as otherwise provided in this Agreement, the terms of sale contained in the [iStar PSA] shall be incorporated herein by reference, and apply with equal force to this Agreement, and [the investor/tenant in common] agrees to assume, carry-out and perform, as and when required, all of the obligations of the purchaser under the [iStar PSA] related to [the investor/tenant in common's] Property

---

[1] The cotenancy agreements between the investors and BH & Sons also contained an arbitration provision: "Unless the relief sought requires the exercise of equity powers of a court of competent jurisdiction, any dispute arising in connection with the interpretation or enforcement of the provisions of this Agreement, or the application or validity thereof, shall be submitted to arbitration." Because the January 14, 2013 order compelling arbitration, arbitrator Chernick's final arbitration award and the judgment entered in conformity with that award were all based solely on the arbitration provision of the iStar PSA, we do not consider whether it might have been proper to order the Amlap investors' claims to arbitration under the cotenancy agreement.

Interest . . . . For convenience, a deed shall be issued directly to [the investor/tenant in common] by the Seller . . . ." The property sale and the tenant-in-common transactions were completed in September 2006.

The cotenancy acquired the La Palma property through a combination of $12.6 million contributed by the limited liability companies and limited partners who had formed the cotenancy and a loan from PNC Bank. The venture performed according to expectations for approximately three years (through September 2009) when the lease of the sole tenant (Cingular Wireless) ended; no replacement tenant was found, and the property remained empty. It subsequently went into foreclosure in May 2010.

3. *The Amlap Investors' Lawsuit*

The Amlap investors filed the instant lawsuit on April 18, 2011 and the operative 67-page fifth amended complaint on July 26, 2012 alleging violations of the Corporate Securities Law of 1968 (Corp. Code, § 25000 et seq.), fraud, breach of fiduciary duty and other related torts, as well as claims for legal malpractice against K. Hopper and accounting malpractice against the Basso parties. In brief, the Amlap investors alleged they had been fraudulently induced to enter into the La Palma property transaction through the promotional materials and purchase agreement developed by the AMC parties. According to the complaint, these materials falsely represented the purchase price for the property was $34,550,000 including a $1.3 million commission to be paid by iStar CTL I to Asset Management Consultants and the Hoppers. "However, the true purchase price was in fact $30,000,000 or less and what was purported to be a commission was an illegal and secret mark-up of the Property purchase price in which the defendants conspired to inflate the price to hide the fact the Property could have been purchased for $30,000,000 or less. . . . [¶] . . . [T]he true fair market value of the Property was not more than $30,000,000 not the $34,550,000 which had been represented to Plaintiffs as the true 'Purchase Price.'"

The original complaint did not name either iStar CTL I or the Basso parties as defendants. In a first amended complaint filed on August 22, 2011 the Amlap investors

added iStar CTL I and its general partner, iStar CTL I Genpar, Inc., as defendants and alleged iStar CTL I had materially aided and participated with the AMC parties in the solicitation of the Amlap investors for acquisition of a tenant-in-common interest in the La Palma property and further alleged in their fraud cause of action that, by entering into the iStar PSA, iStar CTL I and its general partner "adopted" the AMC parties "as its/their agents" to make the disclosures regarding the improper markups in the agreement and knew or should have known that proper disclosures had not been made, "thus ratifying the [AMC parties'] misrepresentations." On October 7, 2011 iStar CTL I moved to compel arbitration under the iStar PSA. The Amlap investors dismissed iStar CTL I and iStar CTL I Genpar without prejudice on October 24, 2011. The Basso parties were added as Doe defendants in November 2011.

Following a hearing on demurrers and motions to strike the first amended complaint, a second amended complaint was filed on January 6, 2012, which contained expanded allegations concerning representations in the property information package upon which the Amlap investors had relied in making their investment. The AMC parties and K. Hopper demurred to the second amended complaint on the ground Amlap ST, LLC lacked standing because it had been dissolved, but answered the second amended complaint with respect to the causes of action as pleaded by Superstition Lookout Delaware, LLC. Mandatory arbitration of disputes between the Amlap investors and the AMC parties or K. Hopper was not asserted as an affirmative defense. The Basso parties also demurred to the second amended complaint. The issue of standing/capacity was ultimately resolved by appointment of a receiver for Amlap ST, LLC, as were questions raised in demurrers concerning the statute of limitations.

The operative fifth amended complaint identified iStar CTL I and iStar CTL I Genpar collectively as "Seller." The pleading described the AMC parties, the Basso parties and K. Hopper collectively as "both de facto issuer and placement agent" in the sale of securities, which it defined to include the tenant-in-common purchase and sale agreements with BH & Sons. Although the Amlap investors did not name iStar CTL I as

7

a defendant, they continued to allege it had "conspired with the defendants to secretly markup the Property purchase price so the same was inflated by at least $5,000,000 including the bogus $1,300,000 commission."

Between February 2012 and September 2012, while the parties were litigating the pleading issues, the AMC parties, K. Hopper and the Basso parties deposed the Amlap investors' person most knowledgeable for approximately 30 hours over six days and had earlier propounded extensive written discovery.

4. *The Petitions To Compel Arbitration*

On October 17, 2012 the AMC parties, K. Hopper and the Basso parties each filed petitions to compel arbitration.[2] The K. Hopper and Basso parties' petitions included a joinder in the AMC parties' petition. The Amlap investors filed oppositions, and all parties filed additional papers. The superior court heard oral argument on November 8, 2012 and December 6, 2012. At the second hearing the court explained its rationale for ordering arbitration as to all claims except those alleging legal and accounting malpractice against K. Hopper and the Basso parties: "I come to the same place as Judge

---

[2] On the opening pages of their memorandum of points and authorities in support of the petition to compel arbitration, the AMC parties explained that arbitration had recently been ordered for all causes of action asserted against them by a different set of tenant-in-common investors in the La Palma property transaction in a separate lawsuit ("the *Ahern* Matter") based on the arbitration provision in the iStar PSA. The AMC parties insisted, "The *Ahern* Matter, to a large extent, mirrors this lawsuit in that it involves the same Petitioners, Plaintiffs' counsel, underlying transaction, transactional structure, alleged wrongdoing, transactional documents, and arbitration provision as the instant lawsuit." They then argued the Amlap investors' claims should be sent to arbitration "for the same reasons stated by the superior court in the *Ahern* Matter." We reversed the judgment confirming the arbitration award in the *Ahern* matter and directed the superior court to vacate its order compelling arbitration in *Ahern v. Asset Management Consultants, Inc.* (Aug. 11, 2015, B253974 & B257684) (nonpub. opn.), concluding the iStar PSA neither established nor governed any relationship between the tenant-in-common investors and the AMC parties and the claims resolved by the arbitrator regarding the investment in the La Palma property transaction were outside the scope of the iStar PSA's arbitration provision.

Wiley did [in *Ahern v. Asset Management Consultants, Inc.*, LASC no. BC484356[3]] in terms of, you know, that these are alleged to be agents, alter egos, et cetera, et cetera, of the signatories. The equitable or the estoppel argument is sort of a second argument, which is okay. I think it does add some merit as well, but I think it's more of the agency provision."

In an order signed January 14, 2013 the court granted the petition of the AMC parties in its entirety; granted in part the petition of K. Hopper, excluding the legal malpractice cause of action against him; and granted in part the petition of the Basso parties, excluding the accounting malpractice cause of action against them. Although it had been suggested that arbitration was proper pursuant to the arbitration provisions in other documents signed by the tenants in common as part of the La Palma property transaction, the court's order specifically limited its ruling to the iStar PSA: "The Arbitration is to be conducted pursuant to the Mandatory Arbitration Provision in the Purchase and Sale Agreement Between iStar CTL, I, L.P., as Seller and BH & Sons, LLC, as Purchaser."

5. *The Arbitration Award and Judgment in Conformity with the Final Arbitration Award*

Following a two-day hearing conducted by arbitrator Richard Chernick in January 2014, the arbitrator concluded the Amlap investors had failed to establish their claims as set forth in the fifth amended complaint, which was considered to be their demand for arbitration. The arbitrator issued an interim award on March 3, 2014 and a final award on August 29, 2014 in favor of the AMC parties, K. Hopper and the Basso parties, including an award of attorney fees and costs to them as prevailing parties. The final award began with a recitation that the arbitration had been conducted in accordance with the iStar PSA and the court's order compelling arbitration of January 14, 2013.

Cross-petitions to confirm and vacate the arbitration award were filed. Following a hearing on February 9, 2015, the court granted in their entirety the petitions to confirm

---

[3] See footnote 2, above.

"pursuant to the iStar PSA" and denied the Amlap investors' petition to vacate the arbitration award. The court's judgment, filed February 23, 2015, further provides, "The Arbitration Award having been submitted to this Court and confirmed; the Court under California Code of Civil Procedure Section 1287.4 enters this Judgment in conformity with the Arbitration Award. The Court further determines that a separate judgment on the claims resolved by the Arbitration Award may be entered notwithstanding any other claims against Kevin James Hopper; Smith, Linden & Basso, LLP; and Allen L. Basso that may remain unresolved in the litigation, which claims are hereby reserved for further order of the Court."

## CONTENTS

The Amlap investors contend the superior court erred in ordering their case to arbitration pursuant to the arbitration provision of the iStar PSA on multiple grounds: There is no enforceable agreement to arbitrate between them and the AMC parties, K. Hopper or the Basso parties; even were they deemed bound by the iStar PSA arbitration provision by virtue of allegations of agency, alter ego or conspiracy involving one or more signatories to that agreement, their claims they were induced to enter into the tenant-in-common investment by fraud and breaches of fiduciary duty are outside the scope of that provision; any right to compel arbitration was forfeited by the respondents' pursuit, prior to demanding arbitration, of discovery that would not have been permitted in arbitration; no prior demand for arbitration under the arbitration agreement had been made by any of the respondents; and the iStar PSA's arbitration provision is both procedurally and substantively unconscionable. The Amlap investors also assert several additional challenges to the court's denial of their petition to vacate the arbitration award including an argument that the arbitrator had improperly permitted the respondents more discovery than authorized under the iStar PSA. We consider only the second of these contentions: the scope of the iStar PSA arbitration provision.

10

## DISCUSSION

1. *We Treat the Appeal from the Judgment in Favor of K. Hopper and the Basso Parties as a Petition for Writ of Mandate*

The superior court's January 14, 2013 order compelling arbitration in this matter did not include the Amlap investors' causes of action against K. Hopper for legal malpractice and the Basso parties for accounting malpractice. The superior court's February 23, 2015 judgment in conformity with the final arbitration award, without any explanation or citation of pertinent authority, purported to enter a separate judgment on the claims resolved by the arbitration award as to K. Hopper and the Basso parties "notwithstanding any other claims against [those defendants] that may remain unresolved in the litigation, which claims are hereby reserved for further order of the court." Acknowledging their malpractice claims remained to be tried, the Amlap investors asserted in their opening brief that this separate judgment as to K. Hopper and the Basso parties was nonetheless appealable, citing Code of Civil Procedure section 1294, subdivision (d), which authorizes an appeal from a judgment entered after the court has confirmed an arbitration award. Neither K. Hopper nor the Basso parties questioned this court's jurisdiction to hear the Amlap investors' appeal.

The trial court's entry of a judgment with claims still pending between the parties was error. (See Code Civ. Proc., § 577 ["[a] judgment is the final determination of the rights of the parties in an action or proceeding"]; *Rubin v. Western Mutual Ins. Co.* (1999) 71 Cal.App.4th 1539, 1547 [all provisions of the law relating to a judgment in an ordinary civil action, including the requirement of finality, apply to a judgment imposed after confirmation of an arbitration award].) Whatever its label, the court's order is not appealable: "[A]n appeal cannot be taken from a judgment that fails to complete the disposition of all causes of action between the parties even if the causes of action disposed of by the judgment have been ordered to be tried separately, or may be characterized as 'separate and independent' from those remaining." (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743; see *Rubin,* at pp. 1547-1548 ["there is no statutory language which suggests that the finality requirement of section 904.1,

11

subdivision (a) is inapplicable to an appeal from a section 1287.4 judgment confirming an arbitration award"]; see also *Griset v. Fair Political Practices Com*. (2001) 25 Cal.4th 688, 697 [denial of petition for writ of administrative mandate is not appealable if other causes of action remain pending between the parties].)

In response to our inquiry about appealability as it relates to K. Hopper and the Basso parties, all affected parties confirmed the malpractice claims remained pending but urged us, because of the unusual circumstances presented, to treat the appeal as a petition for a writ of mandate and to decide the matter on the merits. (See *Morehart v. County of Santa Barbara*, *supra*, 7 Cal.4th at pp. 744-745; *Olson v. Cory* (1983) 35 Cal.3d 390, 401.)[4] We agree it is appropriate to do so here. Because we must resolve the issue of arbitrability in the appeal from the judgment in favor of the AMC parties, judicial economy would not be served by deferring resolution of that identical question with respect to K. Hopper and the Basso parties. To the contrary, requiring the superior court to proceed with a trial of the malpractice claims without the benefit of our ruling on the merits of its order confirming the arbitration award would likely lead to a procedural

---

[4] In their supplemental letter brief the Amlap investors also suggest the judgment may be appealable pursuant to the collateral order doctrine, an exception to the one final judgment rule. Plainly not. The Supreme Court has explained, "When a court renders an interlocutory order collateral to the main issue, dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act, direct appeal may be taken. [Citations.] This constitutes a necessary exception to the one final judgment rule. Such a determination is substantially the same as a final judgment in an independent proceeding." (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368; see *Sjoberg v. Hastorf* (1948) 33 Cal.2d 116, 119 [an otherwise interlocutory order is directly appealable "if the order is a final judgment against a party in a collateral proceeding growing out of the action"].) "To qualify as appealable under the collateral order doctrine, the interlocutory order must (1) be a final determination (2) of a collateral matter (3) and direct the payment of money or performance of an act." (*Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1015-1016.) Resolution of the Amlap investors' causes of action against K. Hopper and the Basso parties for violations of the Corporate Securities Law of 1968, fraud and breach of fiduciary duty can hardly be considered collateral to their claims for professional negligence based upon the same investment transaction and core allegations of misrepresentations and other misconduct.

morass.  (See *Olson,* at p. 401 ["[t]o dismiss the appeal rather than exercising our power to reach the merits through a mandate proceeding would, under the unusual circumstances before us, be '"unnecessarily dilatory and circuitous"'"].)   In addition, the briefs and record before us contain the elements required for an original mandate proceeding; and there is no indication the superior court as respondent would wish to participate in the writ proceedings.  (See *Morehard,* at pp. 745-746; *Olson*, at p. 401.)  Accordingly, we exercise our discretion and consider the scope of the iStar PSA arbitration provision as to all the parties before us.

        2.  *Standard of Review*

        We review the trial court's interpretation of an arbitration agreement de novo when, as here, that interpretation does not depend on conflicting extrinsic evidence. (*Jenks v. DLA Piper Rudnick Gray Cary US LLP* (2015) 243 Cal.App.4th 1, 8; *DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352; see *Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 12 ["'[w]hether an arbitration agreement applies to a controversy is a question of law to which the appellate court applies its independent judgment where no conflicting extrinsic evidence in aid of [the] interpretation was introduced in the trial court'"].)  Our de novo review includes the scope of an arbitration provision (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1522; *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684), as well as the legal determination whether and to what extent nonsignatories to an agreement may be compelled to arbitrate or may invoke the arbitration provision in an agreement.  (*Jenks*, at p. 8; *DMS Services*, at p. 1352; *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707-708.)

        3.  *Governing Law*

        There is a strong public policy in favor of arbitration.  (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 [recognizing strong federal and state public policies favoring arbitration]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971-

13

972.) Still, "[a]lthough '[t]he law favors contracts for arbitration of disputes between parties' [citation], "'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate."'" (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744; accord, *American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. __ [133 S.Ct. 2304, 2306, 186 L.Ed.2d 417 [it is an "overarching principle that arbitration is a matter of contract"]; *AT&T Technologies, Inc. v. Communications Workers of America* (1986) 475 U.S. 643, 658 [106 S.Ct. 1415, 89 L.Ed.2d 648] ["'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit'"]; see also *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

Unless the parties to an arbitration agreement have clearly and unmistakably provided otherwise, questions of arbitrability require a judicial determination. (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83 [123 S.Ct. 588, 154 L.Ed.2d 491]; accord, *AT&T Technologies, Inc. v. Communications Workers of America, supra,* 475 U.S. at p. 649; *City of Los Angeles v. Superior Court* (2013) 56 Cal.4th 1086, 1096.) "Linguistically speaking, one might call any potentially dispositive gateway question a 'question of arbitrability' . . . ." (*Howsam,* at p. 83.) However, that phrase is applicable only in the "kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." (*Ibid.*) Thus, questions of arbitrability include such "gateway issues" as the validity of the arbitration agreement, its scope and who is bound by its terms. (See *id.* at p. 84 [citing cases].)

4. *The Superior Court Erred in Compelling Arbitration and Thereafter Confirming the Arbitration Award Against the Amlap Investors Pursuant to the Arbitration Provision in the iStar PSA*

Pursuant to section 12.20 and Exhibit H of the iStar PSA, with limited exceptions not relevant to this appeal, "Seller" (iStar CTL I) and "Purchaser" (BH & Sons) agreed to submit to mandatory arbitration, "Any dispute among Seller and Purchaser as to the interpretation of any provision of this Agreement or the rights and obligations of any party hereunder . . . ." The Amlap investors, who were direct investors (as tenants in common) in the La Palma property although not signatories to the iStar PSA, nonetheless agreed to be bound by its provisions in connection with their investment. As discussed, the purchase and sale agreements signed by the direct investors confirmed that BH & Sons was assigning and transferring to those investors its rights and remedies under the iStar PSA and the investors agreed to assume and perform "all of the obligations of the purchaser" under the iStar PSA.

The parties vigorously dispute whether the superior court properly determined the Amlap investors' allegations that the various AMC parties, K. Hopper and the Basso parties were agents or alter egos of each other, as well as their allegation that iStar CTL I was part of a conspiracy to inflate the price of the La Palma property as stated in the iStar PSA, justified enforcement of the arbitration provision against a nonsignatory. (See, e.g., *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1069-1070 ["[u]nder California law, a nonsignatory can be compelled to arbitrate under two sets of circumstances: (1) where the nonsignatory is a third party beneficiary of the contract containing the arbitration agreement; and (2) where 'a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim'"].) Although we have serious doubt whether the court's resolution of this question was correct, we need not reach that issue or the related argument concerning the applicability of the doctrine of equitable estoppel. (See *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1713 ["[i]n the

15

arbitration context, a party who has *not* signed a contract containing an arbitration clause may nonetheless be compelled to arbitrate when he seeks enforcement of other provisions of the same contract that benefit him"]; see also *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1238-1240 [nonsignatory plaintiff may be equitably estopped from repudiating arbitration clause in contract when asserting claims that rely on contract terms, particularly when signatory and nonsignatory plaintiffs are related entities]; *Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 220, fn. 5 ["'[i]n the arbitration context, the doctrine [of equitable estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when [the party] has consistently maintained that other provisions of the same contract should be enforced to benefit him'"].)

In the operative pleading the purchaser of the La Palma property (BH & Sons) and persons and entities alleged to be agents, servants, employees and/or joint venturers of the purchaser, and of each other, were sued by third party investors who were the assignees of the purchaser. The seller was no longer a party to the lawsuit; and the dispute, although it unquestionably related in general to the subject matter of the iStar PSA, did not concern the interpretation of any its provisions or the rights and obligations of the parties under the terms of that agreement. Rather, it was directed to the AMC parties' methods of marketing BH & Sons's rights under the iStar PSA and the respective rights and obligations of third party investors and the AMC parties under various agreements separate from the iStar PSA. Those claims were not properly subject to arbitration under the iStar PSA, which was expressly limited to disputes between the seller (and perhaps the seller's agents), on the one hand, and the purchaser (and perhaps its agents), on the other hand, regarding their respective rights and obligations under the iStar PSA.

This court considered a closely analogous situation several years ago in *Lindemann v. Hume* (2012) 204 Cal.App.4th 556 (*Lindemann*), which affirmed the

16

superior court's denial of motions to compel arbitration pursuant to the terms of a purchase and sale agreement in a multiparty action arising out of the acquisition of a newly built home. Part of that case involved the selling parties' motions to compel their business advisors to arbitrate the advisors' cross-claims for indemnification. The arbitration clause in the purchase agreement broadly applied to all disputes or claims between the seller and buyer trusts arising out of the transaction. An additional provision expanded the scope of the arbitration provision to include disputes between either of the two trusts and the real estate brokers who had assisted in the transaction. (*Id*. at p. 569.) Although the litigants contested whether the nonsignatory advisors, who were indisputably agents of the sellers for certain purposes, were bound by the arbitration clause under any circumstances, we concluded it was unnecessary to resolve that dispute because the indemnification claims by the advisors against the selling parties were "outside the scope of the arbitration provision, which covers only disputes between the seller and the buyer, not internecine disputes among members of the seller's team of advisors." (*Id*. at p. 570.) As we explained, while the business advisors had a preexisting relationship with the selling parties, "nothing in the purchase agreement for the Ocean Front Walk property contemplates that disputes between one of the principals to the transaction and its own advisors are subject to arbitration, whether or not those claims somehow relate to, or arise out of, the Schlei Trust's acquisition of the home. The [selling parties] could have included such a right in the purchase agreement (as they did for their real estate agent) or bargained for it when engaging Levin and Nazarian as business advisors, but apparently either chose not to or were unable to obtain their agreement." (*Id*. at p. 571.)

Similar to the arbitration clause in *Lindemann*, the scope of the arbitration provision in the iStar PSA was expressly limited to disputes between the purchaser and the seller concerning the interpretation of the agreement or the rights of the parties under it. The Amlap investors did not assert such claims. First, they were fully aligned with the purchaser side of the transaction only, as were the AMC parties, K. Hopper and the

Basso parties. Second, the claims in the fifth amended complaint concerned BH & Sons and Asset Management Consultants' alleged fraud and breaches of fiduciary duty to induce the Amlap investors' acquisition of their tenant-in-common interest, not the terms or respective rights of seller and purchaser under the iStar PSA itself. Allegations that iStar CTL I facilitated those alleged misrepresentations, whether by conspiracy or the superseded allegation of agency in the first amended complaint, cannot transform that dispute into one covered by the limited provisions of the iStar PSA arbitration provision. The Amlap investors are not seeking to enforce or otherwise take advantage of any portion of the iStar PSA; to the contrary, they challenge the legitimacy of the purchase price identified in that agreement and argue it was part of BH & Sons and Asset Management Consultants' unlawful scheme to defraud third party investors.

As was true in *Lindemann*, the iStar PSA could have required these investors to arbitrate disputes with BH & Sons and its affiliates—the agreement contemplated that BH & Sons would assign its rights to tenant-in-common investors or entities under common control of Asset Management Consultants—but did not, perhaps because several of the agreements between the investors and the AMC parties had their own arbitration provisions. For whatever reason, those other agreements were not the basis for the order compelling arbitration, the final arbitration award or the judgment now before us. Accordingly, they can have no bearing on our decision.

## DISPOSITION

With respect to the AMC parties, the judgment confirming the arbitration award is reversed. The matter is remanded with directions to the superior court to deny their petition to confirm the arbitration award, to grant the petition to vacate the arbitration award as to those parties, to vacate the January 14, 2013 order compelling arbitration and to conduct further proceedings not inconsistent with this opinion.

With respect to K. Hopper and the Basso parties, the appeal is dismissed. Treating the appeal as a petition for writ of mandate, the petition is granted. Let a peremptory writ of mandate issue directing the superior court to vacate its judgment entered in conformity

18

with the arbitration award, as well as its orders granting the petition to confirm the award and denying the petition to vacate the arbitration award and to enter new orders denying the petition to confirm the arbitration award and granting the petition to vacate the award. The superior court is further directed to vacate its January 14, 2013 order compelling arbitration as to these parties.

The Amlap investors are to recover their costs in these proceedings.


PERLUSS, P. J.


We concur:


ZELON, J.


SEGAL, J.