IKUTA, Circuit Judge,
dissenting:
Today the majority holds that § 7 of the National Labor Relations Act (NLRA) precludes employees from waiving the right to arbitrate their disputes collectively, thus striking at the heart of the Federal Arbitration Act’s (FAA) command to enforce arbitration agreements according to their terms. This decision is breathtaking in its scope and in its error; it is directly contrary to Supreme Court precedent and joins the wrong side of a circuit split. I dissent.
I
The plaintiffs in this case, Stephen Morris and Kelly McDaniel, entered into an agreement with Ernst & Young that included a program for resolving covered disputes. The parties agreed that the program was “the sole method for resolving disputes within its coverage.” Under the program, the parties agreed they would first try to resolve a covered dispute by mediation. If that failed, either party could choose to proceed to binding arbitration. The agreement set forth the applicable procedures. Subparagraph K provided:
Separate Proceedings. If there is more than one Covered Dispute between the Firm and an Employee, all such Cov *991 ered Disputes may be heard in a single proceeding. Covered Disputes pertaining to different Employees will be heard in separate proceedings.
As the Supreme Court has explained, such a waiver of class actions is typical in the arbitration context because the class procedural mechanism “interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.” AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). Among other problems, “there is little incentive for lawyers to arbitrate on behalf of-individuals when they may do so for a class and reap far higher fees in the process.” Id. at 347, 131 S.Ct. 1740. Class mechanisms also eviscerate the principal benefits of arbitration— speed and informality, “makfing] the process slower, more costly, and more likely to generate procedural morass than final judgment.” Id. at 348, 131 S.Ct. 1740.
Notwithstanding the agreement to arbitrate, Morris brought a complaint in federal district court alleging that Ernst & Young had violated the Fair Labor Standards Act (FLSA) and analogous state law by improperly classifying him and other employees as exempt employees who were not entitled to overtime wages. (McDaniel was later added as a plaintiff.) Morris purported to bring the action as a class action under Rule 23 of the Federal Rules of Civil Procedure and as a collective action under 29 U.S.C. § 216(b) of the FLSA.[1] After some procedural complications not relevant here, Ernst & Young moved to compel arbitration under its agreement. Morris argued that the “Separate Proceedings” clause of his agreement violated § 7 of the NLRA. The district court rejected this argument. In reversing, the majority holds that employees may not be required to waive the use of a class'action mechanism in arbitrating or litigating their claims. To the extent the Supreme Court has held that class actions are inconsistent with arbitration, see Concepcion, 563 U.S. at 344, 131 S.Ct. 1740, the majority effectively cripples the ability of employers and employees- to enter into binding agreements to arbitrate.
II
Under the FAA, agreements to arbitrate are “valid, irrevocable, and enforceable, save- upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C. § 2; Concepcion, 563 U.S. at 339, 131 S.Ct. 1740. As the Supreme Court has repeatedly explained, the FAA was enacted to overcome “widespread judicial hostility to arbitration agreements.” Concepcion, 563 U.S. at 339, 131 S.Ct. 1740. The Supreme Court’s cases have “repeatedly described the Act as embod[ying] [a] national policy favoring arbitration and a liberal federal policy favoring arbitration agreements.” Id. at 346, 131 S.Ct. 1740 (internal quotation marks and citations omitted). The FAA’s national policy applies to the states, see, e.g., Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), and forecloses any state statute or common law rule that attempts “to undercut the enforceability of arbitra *992 tion agreements,” id. at 16, 104 S.Ct. 852, unless the savings clause in § 2 is applicable, see Concepcion, 563 U.S. at 344, 131 S.Ct. 1740; Perry v. Thomas, 482 U.S. 483, 492 n.9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). Therefore, when a party claims that a state law prevents the enforcement of an arbitration agreement, the court must determine whether that law is preempted by the FAA or is rescued from preemption by the FAA’s savings clause. See Concepcion, 563 U.S. at 339-42, 131 S.Ct. 1740.
But when a party claims that a federal statute makes an arbitration agreement unenforceable, the Supreme Court takes a different approach. In determining whether the FAA’s mandate requiring “courts to enforce agreements to arbitrate according to their terms” has been overridden by a different federal statute, the Supreme Court requires a showing that such a federal statute includes an express “contrary congressional command.” CompuCredit Corp. v. Greenwood, — U.S. -, 132 S.Ct. 665, 669, 181 L.Ed.2d 586 (2012) (internal quotation marks omitted). The burden is on the party challenging the arbitration agreement to show that Congress expressly intended to preclude a waiver of the judicial forum. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). “If such an intention exists, it will be discoverable in the text of the [federal act], its legislative history, or an ‘inherent conflict’ between arbitration and the [federal act’s] underlying purposes.” Id.
“Throughout such an inquiry, it should be kept in mind that ‘questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.’ ” Id. (quoting Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).
Contrary to the majority’s focus on whether the NLRA confers “substantive rights,” in every case considering a party’s claim that a federal statute precludes enforcement of an arbitration agreement, the Supreme Court begins by considering whether the statute contains an express “contrary congressional command” that overrides the FAA. See, e.g., Am. Express Co. v. Italian Colors Rest., — U.S.-, 133 S.Ct. 2304, 2309, 186 L.Ed.2d 417 (2013); CompuCredit, 132 S.Ct. at 669, Gilmer, 500 U.S. at 29, 111 S.Ct. 1647.[2] To date, in every case in which the Supreme Court has conducted this analysis of federal statutes, it has harmonized the allegedly contrary statutory language with the FAA and allowed the arbitration agreement at issue to be enforced according to its terms.[3] Thus in CompuCredit, the Court considered a purported “contrary congressional command” in the Credit Repair Organization Act (CROA), 15 U.S.C. § 1679 et seq., which the plaintiffs claimed precluded consumers from entering an arbitration agreement that waived their right to litigate an action in a judicial forum. 132 S.Ct. at 669. The plaintiffs pointed to the language in CROA that required a busi *993 ness to tell a consumer that “[y]ou have a right to sue,” 15 U.S.C. § 1679c(a), that provided for actual and punitive damages in both individual legal actions and class actions, id. § 1679g, and that provided that “[a]ny waiver by any consumer of any protection provided by or any right of the consumer” was void and could “not be enforced by any Federal or State court,” id. § 1679f(a).
The Supreme Court rejected this claim. Overruling the Ninth Circuit, the Court held that had Congress meant to prohibit arbitration clauses, “it would have done so in a manner less obtuse than what respondents suggest.” CompuCredit, 132 S.Ct. at 672. According to the Court, when Congress wants to restrict the use of arbitration “it has done so with a clarity that far exceeds the claimed indications in the CROA.” Id. The Supreme Court gave two examples of what would constitute a sufficiently clear “contrary congressional command”:
“No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section.” Id. (quoting 7 U.S.C. § 26(n)(2) (2006 ed., Supp. IV)).
“Notwithstanding any other provision of law, whenever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if after such controversy arises all parties to such controversy consent in writing to use arbitration to settle such controversy.” Id. (quoting 15 U.S.C. § 1226(a)(2) (2006 ed.)).
Because the language in the two CROA provisions cited by plaintiffs did not expressly state that a predispute arbitration agreement was unenforceable, the Court determined that they were consistent with enforcement of an arbitration agreement. The “right to sue” language, for instance, merely allowed parties to enter into an agreement requiring initial arbitral adjudication, which then could be reviewed in a court of law. Id. at 670-71. Because the CROA was “silent on whether claims under the Act can proceed in an arbitrable forum,” the Court held that “the FAA requires the arbitration agreement to be enforced according to its terms.” Id. at 673.
In Gilmer, plaintiffs claimed the Age Discrimination in Employment Act of 1967 (ADEA) contained a contrary congressional command to the FAA’s mandate. 500 U.S. at 27-30, 111 S.Ct. 1647. Specifically, the plaintiffs pointed to language allowing employees to litigate in court as providing an unwaivable right to access a judicial forum: “[a]ny person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purpose of this chapter,” 29 U.S.C. § 626(c)(1); Gilmer, 500 U.S. at 27, 111 S.Ct. 1647. They also pointed to language they claimed precluded employees from waiving the right to bring a class action: “The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in section ... 216,” 29 U.S.C. § 626(b), where § 216(b) (also at issue here) states that an action under the FLSA may be brought in court “by any one or more employees for and in behalf of himself or themselves and other employees similarly situated,” although the represented employees must consent. In other words, the plaintiffs argued that because the ADEA explicitly provided for a class mechanism, the statute precluded the enforcement of an arbitration agreement that included a class action waiver.
The Supreme Court rejected this argument. Once again, the statutory language was not sufficiently clear to prevent the enforcement of arbitration agreements that included a class action waiver. Looking closely at the text of the statute, the *994 Court noted that while Congress allowed for judicial resolution of claims, it “did not explicitly preclude arbitration or other nonjudicial resolution of claims.” Gilmer, 500 U.S. at 27-29, 111 S.Ct. 1647. Moreover, “the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred.” Id. at 32, 111 S.Ct. 1647. Thus, the language on which the plaintiffs relied was entirely consistent with enforcing an arbitration agreement that precluded a class mechanism. See also Italian Colors, 133 S.Ct. at 2311 (“In Gilmer ... we had no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute at issue ... expressly permitted collective actions.”). Turning to the ADEA’s legislative history, the Supreme Court found nothing showing a congressional intention to preclude waiver of a judicial forum. Gilmer, 500 U.S. at 29, 111 S.Ct. 1647. Indeed, the Court found in the ADEA a “flexible approach to resolution of claims” and other indicia that Congress did not intend to preclude individual arbitration of disputes. Id. at 29-31, 111 S.Ct. 1647.
Finally, in Italian Colors, there was a purported “inherent conflict,” Gilmer, 500 U.S. at 26, 111 S.Ct. 1647, between arbitration and the policies underlying the Sherman and Clayton Acts, 133 S.Ct. at 2310-12. According to plaintiffs, the cost of individually arbitrating their antitrust claims would so far exceed the potential recovery that requiring them to litigate their claims individually would render the plaintiffs unable to vindicate their federal statutory rights. Id. The Supreme Court rejected this argument. Examining the text of the acts, the Court noted that the federal acts “make no mention of class actions,” and were “enacted decades before the advent of Federal Rule of Civil Procedure 23.” Id. at 2309. The Court gave even less weight to the plaintiffs’ policy arguments. With respect to the argument that “federal .law secures a nonwaivable opportunity to vindicate federal policies by satisfying the procedural strictures of Rule 23 or invoking some other informal class mechanism in arbitration,” the Court simply stated that “we have already rejected that proposition” in Concepcion. Id. at 2310,131 S.Ct. 1740. In Concepcion, the Court made clear that the FAA allows parties to waive the use of a class mechanism because such a mechanism “interferes with fundamental attributes of arbitration.” 563 U.S. at 344, 131 S.Ct. 1740.
In sum, the Supreme Court consistently rejects claims that a “contrary congressional command” precludes courts from enforcing arbitration agreements according to their terms, including when such agreements waive the use of class mechanisms. In analyzing such arguments, the Court has focused primarily on a single question: whether the text of the federal statute at issue expressly precludes the use of a predispute arbitration agreement for the underlying claims at issue. If the statute does not, the Court’s “healthy regard for the federal policy favoring arbitration,” Moses H. Cone, 460 U.S. at 24, 103 S.Ct. 927, leads it to conclude that there is no such contrary command, and the Court reads the purportedly contrary federal statute to allow the enforcement of the agreement to arbitrate. The Court has likewise rejected claims that the legislative history or policy of the federal statute requires a different result. See Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 89-90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (noting that the Court has “rejected generalized attacks on arbitration that rest on ‘suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants.’ ” (quoting Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 481, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989))).
*995 III
Here, the majority ignores the thrust of Supreme Court precedent and declares that arbitration is precluded because it interferes with a substantive right protected by § 7 and § 8 of the NLRA.[4] Section 7 states:
Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.
29 U.S.C. § 157. Section 8 merely makes it “an unfair labor practice for an employer ... to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [§ 7].” 29 U.S.C. § 158(a).
A
Nothing in this language comes remotely close to the examples of contrary congressional commands the Supreme Court identified in CompuCredit, where Congress expressly stated that “[n]o predis-pute arbitration agreement shall be valid or enforceable.” 132 S.Ct. at 672. The language of § 7 and § 8 of the NLRA neither mention arbitration nor specify the right to take legal action at all, whether individually or collectively. See Italian Colors, 133 S.Ct. at 2309 (“The Sherman and Clayton Acts make no mention of class actions.”). Applying Supreme Court precedent, we must conclude there is no “contrary congressional command” in the text of the NLRA.
Moreover, contrary to the majority, Maj. Op. at 980, nothing in either § 7 or § 8 creates a substantive right to the availability of class-wide claims that might be contrary to the FAA’s mandate. While the NLRA protects concerted activity, it does not give employees an unwaivable right to proceed as a group to arbitrate or litigate disputes. Rather, as in CompuCredit and Gilmer, the language can be harmonized with enforcement of an arbitration agreement that waives class action mechanisms. According to a dictionary roughly contemporaneous with the passage of the NLRA, “concerted” action is action that is “mutually contrived or planned: agreed on.” Webster’s International Dictionary of the-English Language 295 (1903 ed.). A natural reading of § 7’s right “to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection” enables employees to jointly arrange, plan, and carry out group efforts to dispute employer positions. In a legal context, this could include joint legal strategies, shared arguments and resources, hiring the same attorneys, or even requesting the Department of Labor to bring an independent action against the employer. But the language does not expressly preserve any right for employees to use a specific procedural mechanism to litigate or arbitrate disputes collectively; even less does it create an unwaivable right to such mechanism. Indeed, the text provides no basis for the majority’s conclusion that § 7 gives employees a substantive, unwaivable right to use Rule 23, § 216(b) of the FLSA, or any other procedural mechanism that might be available for bringing class-wide actions.[5] Accordingly, the Supreme *996 Court’s precedent compels the conclusion that neither § 7 nor § 8 contains a “contrary congressional command” that precludes enforcing Morris’s arbitration agreement according to its terms. If this were not the case, the Court’s statement that Gilmer “had no qualms in enforcing a cl.ass waiver in an arbitration agreement even though the federal statute at issue, tlie Age Discrimination in Employment Act, expressly permitted collective actions,” Italian Colors, 133 S.Ct. at 2311, would be meaningless. Under the majority’s reasoning, regardless whether a class action waiver survives express language in Üie ADEA, as Gilmer held, the waiver nevertheless is unenforceable in every action by an employee against an employer due to the unwaivable right to class procedures in the NLRA.
Nor does the legislative history of the NLRA demonstrate an intent to preclude individual resolution of disputes. The NLRA was enacted decades before Rule 23 created the modern class action in 1966. As the Fifth Circuit observed, in enacting tiie NLRA “Congress did not discuss the right to file class or consolidated claims against employers,” and therefore “the legislative history also does not provide a basis for a congressional command to override the FAA.” D.R. Horton, Inc. v. NLRB, 737 F.3d. 344, 361 (5th Cir. 2013). The majority does not cite any legislative history to the contrary.
Finally, there is no “inherent conflict between arbitration” and the “underlying purposes” of the NLRA. Gilmer, 500 U.S. at 26, 111 S.Ct. 1647. The majority argues that the very purpose of the NLRA is to enable employees to engage in concerted activity, and therefore, it necessarily also has the purpose of enabling employees to engage in collective legal activity, including class actions. Maj. Op. at 981-82. Even assuming that concerted action is “the basic tenet of federal labor policy,” id. at 982, nothing in the NLRA suggests that this protection includes the right to resolve disputes using a particular legal procedure. The majority’s attempt to equate a substantive right to concerted action with a legal procedural mechanism for resolving disputes has no basis in history or Supreme Court precedent. To the contrary, the Court has held that “the right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims.” Deposit Guar. Nat’l Bank v. Roper, 445 U.S. 326, 332, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). Moreover, as the Fifth Circuit pointed out, there is “limited force to the argument that there is an inherent conflict between the FAA and NLRA when the NLRA would have to be protecting a right of access to a procedure that did not exist when the NLRA was (re)enacted.” D.R. Horton, 737 F.3d at 362. Indeed, as the majority acknowledges, “federal labor policy favors and promotes arbitration.” Maj. Op. at 984 (emphasis added). See United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (“[AJrbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself.”); Pyett, 556 U.S. at 257, 129 S.Ct. 1456 (“Parties generally favor arbitration precisely because of the economics of dispute resolution.”).
In sum, nothing in the text, legislative history, or purposes of § 7 precludes en *997 forcement of an arbitration agreement containing a class action waiver.
B
In order to avoid this conclusion, the majority disregards the Supreme Court’s guidance, and instead conflates the question whether “the FAA’s mandate has been overridden by a contrary congressional command,” CompuCredit, 132 S.Ct. at 669 (internal quotation marks omitted), with the question whether an employee’s agreement to arbitrate individually is invalid under the FAA’s savings clause, 9 U.S.C. § 2 (providing that an agreement to arbitrate “shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract”). The majority reasons that: (1) the “Separate Proceedings” requirement in Morris’s contract that all disputes must be resolved individually is illegal because it violates the NLRA; (2) a party may raise a defense that a contract provision is illegal, and such a defense is generally applicable and not related specifically to arbitration agreements; and therefore (3) in response to Ernst & Young’s motion to compel arbitration, Morris’s defense that the “Separate Proceedings” requirement is illegal is preserved by the FAA’s savings clause. In adopting this line of reasoning, the majority joins the Seventh Circuit (the only circuit with which the majority agrees). See Lewis v. Epic Sys. Corp., 823 F.3d 1147 (7th Cir. 2016) (holding that § 7 of the NLRÁ mandates collective legal action for employees, and therefore an arbitration agreement waiving such collective legal action is “illegal” and thus unenforceable under the FAA’s savings clause.)
This reasoning is contrary to the Supreme Court’s FAA jurisprudence. Maj. Op. at 984-85. First, the Supreme Court does not apply the savings clause to federal statutes; rather, it considers whether Congress has exercised its authority to override the FAA’s mandate to enforce arbitration agreements according to their terms. See CompuCredit, 132 S.Ct. at 669. If there is no “contrary congressional command,” i.e., an express statement such as “[n]o predispute arbitration agreement shall be valid or enforceable,” id. then the Supreme Court will conclude that the federal statute at issue can be harmonized with the FAA. Second, the majority’s reasoning is specious because it is based on the erroneous assumption that the waiver of the right to use a collective mechanism in arbitration or litigation is “illegal.” But such a waiver would be illegal only if it were precluded by a “contrary congressional command” in the NLRA, and here there is no such command.
Moreover, even if the FAA’s savings clause were applicable to a federal statute, the majority’s construction of § 7 and § 8 of the NLRA as giving employees a substantive, nonwaivable right to classwide actions would not be saved under that clause. As Concepcion explained, such a purported right would disproportionately and negatively impact arbitration agreements by requiring procedures that “interfere[ ] with fundamental attributes of arbitration.” Concepcion, 563 U.S. at 344, 131 S.Ct. 1740. Because class procedures are generally “incompatible with arbitration,” id. at 351, 131 S.Ct. 1740, and “nothing in [the FAA’s savings clause] suggests an intent to preserve .[defenses] that stand as an obstacle to the accomplishment of the FAA’s objectives,” such rules do not fall within the confines of the savings clause, id. at 343, 131 S.Ct. 1740. The majority’s argument that the nonwaivable right to class-wide procedures it has discerned in § 7 applies equally to arbitration and litigation and so is saved by the § 2 savings clause, Maj. Op. at 984-85, was expressly rejected in Concepcion, see 563 U.S. at 338, 131 S.Ct. 1740 (rejecting plaintiffs’ argument that a state rule prohibiting *998 class action waivers in adhesion contracts applied equally to judicial and arbitral proceedings and thus fit the § 2 savings clause).
The majority’s erroneous reasoning leads to a result that is directly contrary to Congress’s-goals in enacting the FAA. Given that lawyers are unlikely to arbitrate on behalf of individuals when they can represent a class, see id., 563 U.S. at 347, 131 S.Ct. 1740, and an arbitrator cannot hear a class arbitration unless such a proceeding is explicitly provided for by agreement, Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 559 U.S. 662, 684, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010), the employee’s purported nonwaivable right to class-wide procedures virtually guarantees that a broad swath of workplace claims will be litigated, Concepcion, 563 U.S. at 347, 131 S.Ct. 1740. The majority’s reasoning is likewise contrary to the Supreme Court’s ruling that collective actions are not necessary to protect employees’ federal statuto: ry rights. See Gilmer, 500 U.S. at 32, 111 S.Ct. 1647; see also Circuit City Stores, Inc. Adams, 532 U.S. 105, 123, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (“We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context.”).
IV
The Second, Fifth, and Eighth Circuits have concluded that the NLRA does not invalidate collective action waivers in arbitration agreements. See Cellular Sales of Missouri, LLC v. NLRB, 824 F.3d 772, 775 (8th Cir. 2016); D.R. Horton, 737 F.3d at 362; Sutherland v. Ernst & Young LLP, 726 F.3d 290, 297 n.8 (2d Cir. 2013). These decisions are consistent with Supreme Court precedent, which has made it abundantly clear that arbitration agreements must be enforced according to their terms unless Congress has given an express contrary command.
In teasing out of the NLRA a “mandate” that prevents the enforcement of Morris’s arbitration agreement, the majority exhibits the very hostility to arbitration that the FAA was passed to counteract. The Court recognized in Concepcion that the pre-FAA judicial antagonism to arbitration agreements “manifested itself in ‘a great variety’ of ‘devices and formulas’ declaring arbitration against public policy.” 563 U.S. at 342, 131 S.Ct. 1740 (quoting Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 406 (2d Cir. 1959)). Today the majority invents a new such formula. Because I would follow the Supreme Court precedent and join the majority of the circhits concluding that § 7 of the NLRA does not prevent the collective action waiver at issue here, I would hold that Morris’s contract must be enforced according to its terms. I therefore dissent.

. Section 216(b) provides a class action mechanism similar to that contemplated by Rule 23, although it requires voluntary opt in by the members of the class. It states, in pertinent part:
An action to recover the liability prescribed in [§ 216(b)] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated: No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.
29 U.S.C. § 216(b).

„ The Supreme Court has applied the same approach, and reached the same conclusion, in upholding a collective bargaining agreement with a mandatory arbitration clause governed by the NLRA. See 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 265-74, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009).

, Only Wilko v. Swan held that the Securities Act of 1933 contained an unwaivable right to a judicial forum for claims under the Act, thereby precluding the enforcement of an arbitration agreement between parties to a sale of securities. 346 U.S. 427, 432-37, 74 S.Ct. 182, 98 L.Ed. 168 (1953). But the Court expressly overruled Wilko in Rodriguez de Quijas v. Shearson/Am. Express, Inc., rejecting its reasoning as "pervaded ... by the old judicial hostility to arbitration.” 490 U.S. 477, 480, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (internal quotation marks omitted); see also Pyett, 556 U.S. at 266-67, 129 S.Ct. 1456.

. Although the majority cites Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), it does not defer to the NLRB’s interpretation of § 7 as overriding the command of the FAA in In re D.R. Horton v. NLRB, 357 NLRB No. 184 (2012), which was subsequently overruled by the Fifth Circuit. See D.R. Horton v. NLRB, 737 F.3d 344 (5th Cir. 2013). Rather, the majority states that "the NLRA is unambiguous, and there is no need to proceed to the second step of Chevron." Maj. Op. at 983-84.

. The majority claims that Eastex, Inc. v. NLRB, 437 U.S. 556, 566, 98 S.Ct. 2505, 57 *996 L.Ed.2d 428 (1978), conclusively supports its view that § 7 of the NLRA includes a substantive right to class action procedures. Maj. Op. at 982 n.3. This is incorrect. The Court declined to delineate the rights that are provided by § 7 in an administrative or judicial forum, stating: “We do not address here the question of what may constitute ‘concerted’ activities in this context.’’ Eastex, Inc., 437 U.S. at 566 n.15, 98 S.Ct. 2505.